Dion R. McPHERSON,
Plaintiff–Appellee,

v.

MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Defendant–Appellant,

Board of Education of the Public Schools of the City of Ann Arbor, Defendant.

No. 95–1079.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1996.

Decided July 23, 1997.

Lore A. Rogers (argued), Cramer, Minock & Gallagher, Ann Arbor, MI, for Plaintiff–Appellee.

Edmund J. Sikorski, Jr. (argued), Ann Arbor, MI, for Defendant–Appellant.

J. Kingsley Cotton, III, Drolet, Freeman, Preston & Cotton, Bloomfield Hills, MI, for amicus curiae Basketball Coaches Association of Michigan.

Stewart R. Hakola, Marquette, MI, for amicus curiae Michigan Protection and Advocacy Service, Inc.

Before: MARTIN, Chief Judge; MERRITT, KENNEDY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, and COLE, Circuit Judges.

RYAN, J., delivered the opinion of the Court, in which MARTIN, C.J., KENNEDY, NELSON, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, and COLE, JJ., joined. MERRITT, J. (pp. 464), delivered a separate dissenting opinion, in which MOORE, J., joined, with MOORE, J. (pp. 464–468), also delivering a separate dissenting opinion, in which MERRITT, J., joined.

## OPINION

RYAN, Circuit Judge.

The Michigan High School Athletic Association appeals the district court's entry of a preliminary injunction forbidding the MHSAA from enforcing its eight-semester eligibility rule against the plaintiff, Dion R. McPherson, and further forbidding the MHSAA from invoking any penalty against the school district for which McPherson played basketball. The district court entered the injunction after concluding that enforcement of the rule in this case violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. We conclude that, although McPherson has now graduated from high school, the case is not moot. We also conclude that the district court abused its discretion in entering the preliminary injunction, and therefore reverse.

## I.

Dion McPherson attended Huron High School in the Ann Arbor Public School District. Huron, like virtually all private and public secondary schools in Michigan, is a member of the Michigan High School Athletic Association. The principal function of the MHSAA is to promulgate regulations for its member schools that will promote fair athletic competition; the regulations are formulated by consensus of the member schools. As a member of the MHSAA, the Ann Arbor school district has adopted the regulations and has agreed to abide by them.

The MHSAA Handbook makes any student who has completed eight semesters of high school ineligible for interscholastic sports competition:

A student shall not compete in any branch of athletics who has been enrolled in grades nine to twelve, inclusive, for more than eight semesters.

Regulation I, § 4. The Constitution of the MHSAA provides, however, that the so-called eight-semester rule may be waived:

Except for the eligibility rule in regard to age, the Executive Committee shall have the authority to set aside the effect of any regulation governing eligibility of students or the competition between schools *when in its opinion the rule fails to accomplish the purpose for which it is intended, or when the rule works an undue hardship upon the student or school.*

MHSAA Constitution, Art. VII, § 4(E) (emphasis added).

The Handbook provides for certain penalties for member schools that violate the eight-semester rule and specifically contemplates the situation at issue here, where an ineligible student participates in athletic competition by virtue of a court-ordered injunction:

SECTION 4(B)-Accidental, intentional or other use of ineligible players by a junior high/middle school or senior high school shall require that team victories are forfeited to opponents; and any one or more of these additional actions may be taken: (1) that individual or team records and performances achieved during participation by such ineligibles be vacated or stricken; and (2) that team or individual awards earned by such ineligibles be returned to the MHSAA.

SECTION 4(C)-*If a student is ineligible according to MHSAA rules but is permitted to participate in interscholastic competition contrary to such MHSAA rules but in accordance with the terms of a court restraining order or injunction against his/her school and/or the MHSAA, and that injunction is subsequently voluntarily vacated, stayed, reversed or finally determined by the courts that injunctive relief is not or was not justified or expires without further judicial determination,*

*those actions in SECTION 4(B) shall be taken.*

Regulation V, § 4(B) & (C) (emphasis added).

There are a number of purposes for the eight-semester rule. As a member of the MHSAA's Executive Committee testified below, "[t]he eight-semester rule creates a fair sense of competition" by limiting the level of athletic experience and skill of the players in order to create a more even playing field for the competitors. The member further testified that the absence of such a rule would lead, as it has in other states, to red-shirting of players, in which a player is deliberately held back for a year in order to allow the student to gain greater physical and athletic maturity, leading in turn, presumably, to greater athletic ability. The assistant director of the MHSAA testified that the rule was "essential to preserving the philosophy that students attend school primarily for the classroom education and only secondarily to participate in interscholastic athletics," thus encouraging student-athletes to graduate in four years. He, too, opined that red-shirting abuses would become common in the absence of the eight-semester rule. The Executive Committee member testified that the rule was "essential" to the functioning of the MHSAA, and that it was "basic ... to the administration of the athletics in keeping the playing field level." Acknowledging, however, that waivers had been granted in the past, the member testified that the circumstances were narrow; they had been limited to cases in which the waiver was applied for, *prior* to the expiration of the eight semesters, and to cases in which students had been physically unable to attend school for a medical reason, or had been limited to taking a small number of courses, which limitations would result in attending high school more than eight semesters.

McPherson was not a high academic achiever during high school. He originally entered the eleventh grade in 1992, but had to repeat that grade during the 1993–94 school year. Thus, the 1993–94 school year represented McPherson's seventh and eighth semesters in high school. It was while repeating the eleventh grade that McPherson participated in varsity basketball for the first time. Before that time, he was ineligible to participate in sports because he failed to meet a grade point average requirement of the Ann Arbor school district-a requirement separate and apart from requirements of the MHSAA. His grades improved, however, while repeating the eleventh grade, making him eligible to play under Ann Arbor standards.

In September 1994, McPherson was diagnosed as having Attention Deficit Hyperactivity Disorder, and later was diagnosed as also having a seizure disorder. Both diagnoses were made at the beginning of his ninth semester in high school and after he had exhausted his athletic eligibility under the eight-semester rule. As a result, McPherson was classified under state law as having a "specific learning disability." McPherson had never been referred for special education testing prior to the 1994–95 school year.

McPherson wanted to participate in basketball during the 1994–95 school year, but the eight-semester rule barred his participation. He filed a request with the MHSAA for a waiver. The MHSAA initially considered the waiver request in November 1994. The Executive Committee noted that it "was provided no information regarding this student's physical stature or his athletic experience or ability in comparison to teammates or opponents." It further noted additional reasons for its reluctance to grant the waiver:

[I]f eligibility were allowed in this case, it would provide this student with opportunities that exceed the maximum opportunities allowed other students. Furthermore, granting eligibility in this case might provide the Ann Arbor Public Schools an unfair competitive advantage for its school over others as a result of the district's own admitted failure to refer this student for special education services in earlier years, and/or by the school district's applying a higher academic standard for eligibility for the student in his earlier semesters and a lower academic standard for eligibility in the later and additional semesters when he

would be more mature, experienced and skilled.

The MHSAA therefore instructed the school district to demonstrate a variety of factors prior to further consideration by the MHSAA of the waiver request.

The following month, in anticipation of its further consideration of McPherson's request, the MHSAA met with Jane Bennett, the Athletic Director of Huron High School in Ann Arbor. Bennett attempted to provide "some of th[e] information" that MHSAA had requested, including information that McPherson "was less than average height and lower than average weight compared to not only members of [the Huron] team but a good sample of [Huron] opponents." It was her opinion that McPherson was "not a safety risk to his teammates in practice or to his opponents in games," and that he was not "the best player on the team," but rather was "somewhere in the middle of the pack."

The MHSAA thoroughly considered the information it received from Bennett, and rejected McPherson's request. It first noted that

the circumstances of this student were unlike the circumstances for which the Executive Committee had granted waiver in the past, because this student's medical condition had never resulted in the requirement by medical authorities that he be restricted to a reduced number of courses during one or more of eight semesters, which might have prohibited a timely graduation.

It based its rejection on that fact, as well as additional reasons:

(2) The documentation and explanations tended to demonstrate that the student had been enrolled previously in eight semesters, which would be the maximum opportunity afforded any student in any MHSAA member school with enrollment of 75 students or more; and under MHSAA eligibility requirements, the student may have been eligible for some or all of the eight semesters....

(3) The documentation and explanations tended to demonstrate that the school district had refused to waive or reduce its higher academic eligibility require-

ment for this student, or had not placed the student during earlier years in the ungraded alternative education programs that were available to the student and which were exempt from the higher academic eligibility requirement, or had not allowed the student to participate even after being placed in the ungraded program....

(4) It is inappropriate for the school district to request the athletic association to waive an eligibility requirement for a fifth year senior when the school district had not waived its own higher eligibility requirements for this student during any of the previous years when it had the authority to do so.

(5) The documentation and explanation tended to demonstrate that participation by this fifth year senior might reduce the playing time of teammates who had met the essential eligibility requirements without exception and might affect the outcome of contests in which all opposing players had met the essential eligibility requirements without exception.

(6) To allow a school district to play in a fifth year a student who was eligible under MHSAA regulations but who did not play in earlier years because of his own choices or the school district's policy and actions[ ] would establish an unfavorable precedent that could tend to the establishment of unfair competitive advantages and undermine the confidence of the MHSAA membership that there will be a uniform set of essential eligibility requirements applied equally to all students and school districts.

McPherson filed a complaint in the federal district court in December 1994, claiming violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Michigan Handicappers' Civil Rights Act, Mich. Comp. Laws Ann. § 37.1101–.1607 (West 1985). He also alleged an equal protection violation under 42 U.S.C. § 1983. He requested that the court

enjoin the MHSAA from prohibiting his participation in interscholastic athletic competition, and further "restrain[ ] the MHSAA from taking any action which would cause the Defendant school district to be penalized for Plaintiff's participation in interscholastic athletic competition, including ... requiring that any games in which Plaintiff competes be forfeited."

The district court considered the plaintiff's ADA and Rehabilitation Act claims and, concluding that he had a reasonable likelihood of success on the merits, issued a preliminary injunction in late January 1995, allowing McPherson to participate in basketball during his senior year. The court further ordered that the MHSAA was prohibited from taking "any action which would cause the school district to be penalized for Plaintiff's participation in interscholastic athletic competition."

## II.

 Although it is not an issue raised by either party, our first inquiry on appeal must be whether this case is moot. "Under Article III of the Constitution, our jurisdiction extends only to actual cases and controversies. We have no power to adjudicate disputes which are moot." *Crane v. Indiana High Sch. Athletic Ass'n,* 975 F.2d 1315, 1318 (7th Cir.1992) (citations omitted). The mootness inquiry must be made at every stage of a case; thus, if a case becomes moot during an appeal, the judgment below must be vacated and the case remanded with instructions to dismiss. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950). "The test for mootness 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties....' " *Crane,* 975 F.2d at 1318 (citation omitted).

 It is plain that the controversy addressed by the part of the preliminary injunction ordering that McPherson be allowed to compete during the 1995 basketball season is moot. As we observed in an earlier case presenting strikingly similar issues, the season is over, and there are no more games to be played. *See Sandison v. Michigan High*

*Sch. Athletic Ass'n, Inc.,* 64 F.3d 1026, 1029 (6th Cir.1995). Further,

> [t]he "capable of repetition yet evading review" exception to mootness does not apply to these plaintiffs because the exception requires not only that the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, but also that there was a reasonable expectation that the *same complaining party* would be subject to the same action again.

*Id.* at 1029–30 (some emphasis added) (citations and some internal quotation marks omitted). Since McPherson graduated from high school in June 1995, there can be no reasonable expectation of another controversy over his eligibility to play high school basketball. *See id.* at 1030.

We nonetheless conclude that the case as a whole is not moot. McPherson's complaint specifically requested that the district court "restrain[ ] the MHSAA from taking any action which would cause the Defendant school district to be penalized for Plaintiff's participation in interscholastic athletic competition, including ... requiring that any games in which Plaintiff competes be forfeited." Moreover, the district court's injunction provided that the MHSAA was prohibited from taking "any action which would cause the school district to be penalized for Plaintiff's participation in interscholastic athletic competition." As discussed above, if a student is ineligible under MHSAA rules but is nonetheless allowed to play because of a court-ordered injunction, the MHSAA shall "require that team victories [be] forfeited to opponents," and may vacate or strike "that individual or team records and performances achieved during participation by such ineligibles," if the "injunction is subsequently ... reversed or finally determined by the courts that injunctive relief is not or was not justified." Regulation V, § 4(B) & (C).

The MHSAA has requested that this court reverse the district court's preliminary injunction, and determine that injunctive relief was not justified. Clearly, therefore, the relief sought by the MHSAA in this appeal " 'would, if granted, make a difference to the legal interests of the parties,' " *Crane,* 975

F.2d at 1318 (citation omitted), because the MHSAA would then be required to forfeit to Huron's opponents those team victories in which McPherson participated, and could vacate or strike the records of McPherson and his basketball team-a course of events that McPherson specifically sought to prevent in his suit, and that the district court specifically ordered was prohibited. As we explained in *Sandison,*

> the second part of the preliminary injunction-ordering the MHSAA to refrain from penalizing the high schools for permitting the plaintiffs to compete-is not moot. When an age-ineligible player competes on a high school team, MHSAA Regulation 5 § 4(B), (D) provide for penalties such as forfeiture of team victories and erasure of individual performances. [The plaintiffs] of course still have an interest in preventing the MHSAA from erasing their teams' victories and their own performances. Accordingly, this controversy remains live.

*Sandison,* 64 F.3d at 1030; *accord Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 928 (8th Cir.1994); *Crane,* 975 F.2d at 1318.

### III.

#### A.

We now turn to the defendants' challenge to the district court's issuance of the preliminary injunction.

 A district court must consider four factors in determining whether to issue a preliminary injunction:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Sandison,* 64 F.3d at 1030. We review the district court's issuance of a preliminary injunction under the abuse of discretion standard. *See id.* Either a legal error, for which we conduct *de novo* review, or a factual error, for which we conduct review only for clear error, " 'may be sufficient to determine that the district court abused its discretion.' " *Id.* (citation omitted).

 As a general matter, " 'the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements.' " *Id.* (emphasis and citation omitted). Further, the district court's "weighing and balancing of the equities of a particular case is overruled only in the rarest of cases." *Id.* (internal quotation marks and citation omitted). Nonetheless, because we conclude that McPherson has *no* possibility of success on the merits of his ADA or Rehabilitation Act claims, we are constrained to overrule the district court's balancing in this instance.

#### B.

 The plaintiff sought and was granted relief under both the ADA and the Rehabilitation Act, both of which prohibit discrimination against the disabled. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA provides, under Title II, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, and, under Title III, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who ... operates a place of public accommodation," 42 U.S.C. § 12182(a).

 It is well-established that the two statutes are quite similar in purpose and scope. "The analysis of claims under the

Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973. . . ." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir.1996). Further, "[b]y statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." *Burns v. City of Columbus,* 91 F.3d 836, 842 (6th Cir.1996) (citing 29 U.S.C. § 794(d)). Thus, "[b]ecause the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. State of Ohio,* 104 F.3d 803, 807 (6th Cir.1997). "[U]nder either of these statutes, plaintiffs must allege either that they are or are perceived to be handicapped within the definitions of each of the acts, that they are otherwise qualified for the job, and that they were discriminated against on the basis of their disability. Under the Rehabilitation Act, [plaintiffs] must further allege that the [defendant] receives federal funds." *Id.* In short, the principal distinction between the two statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities. There may be other differences in the application of the two statutes, including whether the "solely by reason of . . . disability" standard made explicit in the language of the Rehabilitation Act should be imported into the ADA, which contains no such language. Those differences in the two statutes are not implicated, however, in the issues presented in this case and, therefore, we need not address them.

Not surprisingly, most of the law that has been made in ADA cases has arisen in the context of employment discrimination claims, but we have no doubt that the decisional principles of these cases may be applied to this case. As this court recently explained in an ADA claim that arose in the employment context, a plaintiff in such a case "must prove that (1)[he] has a disability; (2)[he] was qualified for the job; and (3)[he] *either* was denied a reasonable accommodation for [his] disability *or* was subject to an adverse employment decision that was made solely because of [his] disability." *Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996) (emphasis added); *see Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir.1995). That is, as another court has explained, again in the employment context, "[f]ailure to consider the possibility of reasonable accommodation for [known] disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities." *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 143 (2d Cir.1995).

Applying these principles to this case, there are two methods that would allow the plaintiff to demonstrate that the MHSAA's actions were taken *because of* his disability: either (1) by offering evidence that learning disabilities were actually considered by the MHSAA in formulating or implementing the eight-semester rule, or (2) by showing that the MHSAA could have reasonably accommodated his disability, but refused to do so. In the alternative, it might be possible under the ADA for the plaintiff to rely on a disparate impact theory, *cf. Monette,* 90 F.3d at 1178 n. 5, but the plaintiff has specifically disavowed any reliance on a disparate impact theory, and it is not necessary for us to explore the availability and contours of such a claim in the ADA context.

As is obvious, the plaintiff has no evidence, and has not even suggested, that the formulation or implementation of the MHSAA's eight-semester rule has in any way been motivated by considerations of barring students with learning disabilities from play. As we explained in *Sandison* with regard to the 19–year age limit at issue there, the regulation

is a "neutral rule"—neutral, that is, with respect to disability—and as far as the record shows, is neutrally applied by the MHSAA. Throughout the plaintiffs' first three years of high school, [the age limit] did not bar the students from playing interscholastic sports, yet the students were of course learning disabled during those years. It was not until they turned nineteen that [the age limit] operated to disqualify them. Accordingly, we must conclude that the age regulation does not exclude students from participating "solely by reason of" their disability.

*Sandison,* 64 F.3d at 1032. As we concluded, "[t]he plaintiffs' respective learning disability does not prevent the two students from meeting the age requirement; the passage of time does." *Id.* at 1033.

■ McPherson's claim depends, therefore, upon a showing that the MHSAA could have reasonably accommodated him and refused to do so. As in *Sandison,* the only possible accommodation available to McPherson, and the only accommodation he requests, is a complete waiver of the MHSAA regulation at issue. *See id.* at 1034. Conceivably, if McPherson's situation had been brought to the attention of the MHSAA *before* he had completed eight semesters of high school, other accommodations might have been available. As it stands, however, a waiver of the eight-semester rule was necessary to allow McPherson to participate in basketball in his ninth and tenth semesters. We must therefore determine whether requiring the MHSAA to grant a waiver would "impose[ ] undue financial and administrative burdens ..., or require[ ] a fundamental alteration in the nature of [the] program." *Id.* (internal quotation marks omitted) (quoting *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987)). By way of example, as we have elsewhere observed,

> [a]n educational institution is not required to accommodate a handicapped individual by eliminating a course requirement which is reasonably necessary to proper use of the degree conferred at the end of a course of study. Waiver of a necessary requirement would [be] a substantial rather than merely a reasonable accommodation.

*Doherty v. Southern College of Optometry,* 862 F.2d 570, 575 (6th Cir.1988) (citation omitted) (*quoted in Sandison,* 64 F.3d at 1034).

The crux of McPherson's argument in this appeal is that the eight-semester rule is fundamentally different from the 19–year age limit discussed in *Sandison* because waivers of the 19–year age limit are prohibited, while the MHSAA is allowed to grant, and has in the past granted, waivers of the eight-semester rule. Thus, the plaintiff reasons, the rule cannot be considered necessary, and there

can be no burden on the MHSAA in being required to waive the rule in his case. Therefore, McPherson argues, the MHSAA should be required to waive the eight-semester rule as a reasonable accommodation of his learning disability.

Part of our reasoning in *Sandison* is helpful here. We concluded in that case, first, that "[t]he age restriction is a necessary requirement of the interscholastic sports program" because it " 'safeguards against injury' to other players[ ] and ... 'prevents any unfair competitive advantage that older and larger participants might provide.' " *Sandison,* 64 F.3d at 1035 (citation omitted). We did not rely on the fact that the age requirement had been designated "non-waivable" by the MHSAA in order to conclude that the requirement was a necessary one; in fact, we did not even mention in *Sandison* that waivers were prohibited by the MHSAA. It would make no sense to conclude that the MHSAA's designation of a particular rule as non-waivable requires a determination by this court that the rule is "necessary." To do so would amount to an improper delegation to the MHSAA of this court's responsibility to independently determine whether the rule is, in fact, necessary. In other words, the simple fact that the MHSAA labels a rule necessary does not make it so. Conversely, its determination that a rule may sometimes be waived under some circumstances does not mean that the rule, as a general matter, is not "necessary" to the successful functioning of a sports program.

We find no principled distinction between the nature and purpose of the age-limit rule and the eight-semester rule that could lead us to conclude that the former is "necessary" while the latter is not. The purposes served by the two rules are largely the same: both are intended to limit the level of athletic experience and range of skills of the players in order to create a more even playing field for the competitors, to limit the size and physical maturity of high school athletes for the safety of all participants, and to afford the players who observe the age-limit rule and the eight-semester rule, presumably athletes of less maturity, a fair opportunity to compete for playing time. In addition, the

MHSAA here produced evidence that the absence of an eight-semester rule could lead to widespread red-shirting abuses, and that the rule was "essential to preserving the philosophy that students attend school primarily for the classroom education and only secondarily to participate in interscholastic athletics." These considerations satisfy us that the eight-semester rule is a necessary one to the sports programs, including basketball, regulated by the MHSAA.

In *Sandison*, after concluding that the 19–year age limit was necessary, we turned to a consideration of whether requiring a waiver would constitute a reasonable accommodation, and concluded that it would not:

> [W]aiver of the age restriction fundamentally alters the sports program. Due to the usual ages of first-year high school students, high school sports programs generally involve competitors between fourteen and eighteen years of age. Removing the age restriction injects into competition students older than the vast majority of other students, and the record shows that the older students are generally more physically mature than younger students. Expanding the sports program to include older students works a fundamental alteration.
>
> Second, although the plaintiffs assert that introducing their average athletic skills ... would not fundamentally alter the program, the record does not reveal how the MHSAA, or anyone, can make that competitive unfairness determination without an undue burden. The MHSAA's expert explained that five factors weigh in deciding whether an athlete possessed an unfair competitive advantage due to age: chronological age, physical maturity, athletic experience, athletic skill level, and mental ability to process sports strategy. It is plainly an undue burden to require high school coaches and hired physicians to determine whether these factors render a student's age an unfair competitive advantage. The determination would have to be made relative to the skill level of each participating member of opposing teams and the team as a unit. And of course each team member and the team as a unit

would present a different skill level. Indeed, the determination would also have to be made relative to the skill level of the would-be athlete whom the older student displaced from the team. It is unreasonable to call upon coaches and physicians to make these near-impossible determinations.

*Sandison*, 64 F.3d at 1035. These observations in *Sandison*, describing the difficulty inherent in making the necessary case-by-case assessments, are strikingly illustrated here, where the only information available to the MHSAA about McPherson was the vague representations of Jane Bennett to the effect that she believed McPherson to be of less than average height and weight and of an average skill level with reference to his own team as well as opposing teams.

In short, the considerations we found dispositive in *Sandison* pertain here. Requiring a waiver of the eight-semester rule, under the circumstances present here, would work a fundamental alteration in Michigan high school sports programs. Moreover, requiring a waiver under these circumstances would impose an immense financial and administrative burden on the MHSAA, by forcing it to make "near-impossible determinations" about a particular student's physical and athletic maturity. One could argue, of course, that the fact that the MHSAA allows for waivers under some circumstances demonstrates its judgment that these determinations are not unduly burdensome. While that point has a superficial appeal, we find an important distinction between the class of waiver cases contemplated by the MHSAA and the type of relief the plaintiff asks us to impose. The plaintiff would have us require waivers for all learning-disabled students who remain in school more than eight semesters. That, of course, would have the potential of opening floodgates for waivers, while until now, there have been only a handful of cases deemed appropriate for waivers. Assessing one or two students pales in comparison to the task of assessing a large number of students; an increase in number will both increase the cost of making the assessments, as well as increase the importance of doing so correctly. Having one student who is unfairly advantaged may be problematic, but

having increasing numbers of such students obviously runs the risk of irrevocably altering the nature of high-school sports.

We are not insensible, however, to the plaintiff's contention that the existence of past waivers makes it inherently reasonable to require the MHSAA to grant a waiver in this case. However, there are important differences between those cases and this. The only reason McPherson did not participate in basketball during the ninth and tenth grades, and during his first year in eleventh grade, was that the Ann Arbor school district forbade him to do so because it held him to a higher academic eligibility requirement than was required by the MHSAA. Moreover, the school district never referred McPherson for any testing that would have determined the existence of his learning disability at an earlier time. Indeed, there was no determination made that McPherson had a learning disability until after his eight-semester eligibility was exhausted. Thus, as the MHSAA observed, to allow a waiver under these circumstances would create a highly unfavorable precedent, in which a school district can have control over a player's eligibility, find that player to be ineligible, and then later, when he has physically and athletically matured, find him eligible. In short, to require a waiver here would be to give the green light to school districts and coaches who wish to engage in widespread red-shirting. We do not suggest that the Ann Arbor school district, in this instance, engaged in any sort of malfeasance; there certainly is no evidence in the record to support such speculation. We nonetheless observe that requiring a waiver in this case would directly threaten one of the fundamental purposes of the eight-semester rule; namely, the avoidance of red-shirting. It is unclear how the MHSAA could ever be expected to sort out the legitimate requests from those based on a desire to gain an unfair advantage. In short, requiring the MHSAA to grant waivers under these circumstances would be to require it to take on an immense administrative burden. This necessarily means that the plaintiff's requested accommodation is not reasonable.

In sum, we conclude that the plaintiff has not made out a successful claim under the ADA. As already discussed, the elements of a Rehabilitation Act claim are largely similar to those of an ADA claim, with the additional requirement that the defendant be shown to receive federal financial assistance. *See, e.g., Burns,* 91 F.3d at 840. Thus, for the same reasons that the plaintiff's ADA claim fails, we find that the plaintiff's Rehabilitation Act claim must also fail.

### C.

■ We note, in closing, that there are several issues we do not discuss at length today. The district court failed to specify whether it found the MHSAA to be subject to Title II or Title III of the ADA. Instead, it simply concluded that the MHSAA was *either* a public entity, that is, subject to Title II, *or* a private entity operating a place of public accommodation, that is, subject to Title III. As this court established in *Sandison,* it is quite clear that the MHSAA is not a private entity operating a place of public accommodation. *Sandison,* 64 F.3d at 1036. The plaintiff here has not introduced any evidence, beyond what was in the record in *Sandison,* that would lead this court to the different conclusion.

In *Sandison,* we found it unnecessary to resolve whether the MHSAA was subject to Title II, as a public entity, because we resolved the case on different grounds. *Id.* at 1035. We do the same today, and thus do not decide whether the MHSAA is a public entity. We note, however, that the record is far from clear that the MHSAA could be properly so characterized. *See Hoot v. Milan Area Sch.,* 853 F.Supp. 243, 250–51 (E.D.Mich.1994).

We likewise note that it is far from clear that the MHSAA is covered by the Rehabilitation Act; there is an utter dearth of evidence that the MHSAA receives federal or state funds, and this was an issue left unaddressed by the district court. Once again, however, we find it unnecessary to resolve that issue, usually a threshold question, simply because we conclude that the plaintiff's claim plainly fails to pass muster on other grounds. *See Sandison,* 64 F.3d at 1031 n. 2.

## IV.

We **VACATE** the district court's preliminary injunction, **REVERSE** the judgment, and **REMAND** this case for further proceedings consistent with this opinion.

MERRITT, Circuit Judge, dissenting.

I concur fully in Judge Moore's dissenting opinion. I write to point out that the Court has made no ruling that the MHSAA may now lawfully penalize the Ann Arbor school system for allowing McPherson to play basketball pursuant to a mandatory federal court order then valid on its face. Should the MHSAA seek in the future to forfeit games or take other punitive action against the school for conduct ordered by the federal court in its injunctive order, the court below can then determine whether such punitive measures are valid. Our Court has left to another day the question of the authority of the MHSAA to punish a school for obeying a mandatory injunction.

In this case, the school district simply complied with the Supreme Court's longstanding rule that "[a]n injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn." *W.C. Grace and Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983) (citing *Walker v. City of Birmingham*, 388 U.S. 307, 313–14, 87 S.Ct. 1824, 1828, 18 L.Ed.2d 1210 (1967)). If the MHSAA is permitted to retaliate against the school district for its compliance with a district court injunction, then the power of district courts to issue injunctions will be undermined. *See Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 1990 WL 104036 (6th Cir. July 25, 1990) (unpublished) ("It would be

unfair to penalize McGavock High School for actions that it took in compliance with a District Court order during the pendency of that order."); *Crandall v. North Dakota High Sch. Activities Ass'n*, 261 N.W.2d 921, 927 (1978) ("It would be unjust to penalize or sanction the high school for complying with a court order."); *Indiana High Sch. Athletic Ass'n, Inc. v. Avant*, 650 N.E.2d 1164, 1171 (Ind.App. 3 Dist.1995) ("It would be illogical and manifestly unreasonable to exact penalties upon individuals and schools as punishment or retribution for the actions in complying with a court order.") The contrary view of the Supreme Court of Michigan is unpersuasive. *See Cardinal Mooney High School v. MHSAA*, 437 Mich. 75, 467 N.W.2d 21 (1991).

MOORE, Circuit Judge, dissenting.
Because I believe that this appeal is moot, I respectfully dissent.[1]

The Supreme Court repeatedly has reaffirmed that "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans For Official English v. Arizona*, —— U.S. ——, ——, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (citation omitted). Stated differently, "[t]he requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Id.* at ——–—— n. 22, 117 S.Ct. at 1069 n. 22 (quotation marks and citations omitted). When a case becomes moot on appeal, an Article III case or controversy no longer exists, and we are without jurisdiction to consider the merits of the appeal. *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 600–01, 98 L.Ed.2d 686 (1988).[2] As the majority

---

1. The majority begins its mootness analysis by stating that the mootness issue was not raised by either party. This is somewhat of an overstatement. MHSAA's supplemental memorandum in support of en banc review begins with a discussion as to why the Sixth Circuit panel in this case erred in its mootness analysis. Additionally, as Chief Judge Martin stated at the beginning of oral argument in this matter, we granted en banc review because of the potential conflict between the panel's mootness analysis and our opinion in *Sandison v. Michigan High Sch. Athletic Ass'n,*

*Inc.,* 64 F.3d 1026 (6th Cir.1995). The remainder of oral argument confirmed this observation: the parties spent the majority of the time allotted for argument on the mootness issue.

2. Although the current caselaw indicates otherwise, some jurists and academicians believe that when a case becomes moot on appeal, Article III does not require dismissal of the case. In his concurrence in *Honig,* Chief Justice Rehnquist openly questioned whether the mootness doctrine should be based upon Article III. To sup-

correctly notes, when presented with such a situation, we must vacate the judgment below and remand the case with instructions for the action to be dismissed. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950).

Ascertaining the meaning of "case or controversy," however, is not the simplest of tasks. *See Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968) ("As is so often the situation in constitutional adjudication, those two words have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government."). Yet this does not mean that we lack the tools to reach the correct decision. In analyzing issues of mootness it is helpful to keep in mind that "[t]hese problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case." 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533, at 211–12 (2d ed.1984). We also know that a case is not justiciable if it is not "presented in an adversary context [or] in a form historically viewed as capable of resolution through the judicial process." *Flast*, 392 U.S. at 95, 88 S.Ct. at 1950. After analyzing the unusual facts of this case, I believe that the requirement of an adversary context is lacking.

Dion McPherson brought this action so that he could play basketball for his high school team. The first part of the preliminary injunction granted McPherson this request, providing: "Defendants are restrained from taking any action to prevent Plaintiff from participating in interscholastic athletic competition for the Plaintiff's remaining senior year in high school during the pendency of this suit. . . . ." Because McPherson has since graduated from high school and will play no more games, the majority correctly concludes that this portion of the injunction is moot. I also agree with the majority that the "capable of repetition, yet evading review" exception as traditionally formulated does not apply in this situation, because there is no reasonable expectation that McPherson himself will be subjected to the same conduct by the MHSAA.[3]

---

port his argument, he gave the following illustration involving the "capable of repetition, yet evading review" exception: "If our mootness doctrine were forced upon us by the case or controversy requirement of Art. III itself, we would have no more power to decide lawsuits which are 'moot' but which also raise questions which are capable of repetition but evading review than we would to decide cases which are 'moot' but raise no such questions." *Honig*, 484 U.S. at 330, 108 S.Ct. at 608 (Rehnquist, C.J., concurring); *see also* Evan Tsen Lee, *Deconstitutionalizing Justiciability: The Example of Mootness*, 105 HARV L.REV. 603, 612, 623–36 (1992); Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1383–85 (1973). In *Arizonans For Official English*, however, a unanimous Supreme Court once again reaffirmed the conclusion that the mootness doctrine derives directly from Article III. —— U.S. at ——–——, 117 S.Ct. at 1068–69.

3. Similar to the issues raised regarding the relationship between the mootness doctrine and Article III, a question has been raised as to whether the "capable of repetition, yet evading review" exception should always be limited to disputes involving the same parties. In *Honig*, Justices Scalia and O'Connor suggested that the Court did not always limit the "capable of repetition, yet evading review" exception to situations involving the same parties:

*Roe[ v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)*]*, at least one other abortion case, and some of our election law decisions differ from the body of our mootness jurisprudence *not* in accepting less than a probability that the issue will recur, in a manner evading review, between the same parties; but in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur *between the defendant and the other members of the public at large* without ever reaching us.

484 U.S. at 335–36, 108 S.Ct. at 610–11 (Scalia, J., dissenting) (internal citations omitted). Had Justice Scalia's interpretations of the Court's mootness jurisprudence commanded a majority of the Court, cases similar to the present dispute potentially would qualify under the "capable of repetition, yet evading review" exception. A student will not know whether the MHSAA will recognize an exception to the eight-semester rule until the student attempts to participate in high school athletics after completing eight semesters. By that time, graduation will be near, and the chance for appellate review before graduation likely will be nonexistent. Because a majority of the Court has never agreed with Justice Scalia's interpretation, the present dispute cannot fall within the "capable of repetition, yet evading review" exception. Even if Justice Scalia's views had prevailed, however, I would still find this appeal moot based on the current posture of the parties for the reasons stated in this dissent.

Focusing on the part of the injunction prohibiting the MHSAA from penalizing the school district for McPherson's participation in interscholastic athletics, the majority concludes that this dispute as a whole is not moot. According to the majority, this controversy remains live because the MHSAA wishes to sanction the school district for McPherson's participation and because McPherson himself retains an interest in preventing the MHSAA from erasing his team's victories and his own performances. As for the first reason, the school district is not a party to this appeal; we are without power, therefore, to adjudicate any dispute between the MHSAA and the school district. On this point, *Jordan v. Indiana High Sch. Athletic Ass'n, Inc.,* 16 F.3d 785 (7th Cir.1994), is instructive. In *Jordan,* the Indiana High School Athletic Association (IHSAA) argued that a dispute presenting remarkably similar facts to the instant case was not moot because the IHSAA desired to sanction the plaintiff's high school for the plaintiff's athletic participation. Rejecting this argument, the court stated:

> [B]ecause Snider High School is no longer a party to this suit, any actions the IHSAA may take against it or its basketball team are irrelevant in determining whether a "live" controversy exists between Herman Jordan and the IHSAA. . . . It is axiomatic that a case or controversy must exist between the actual parties to a law suit for a federal court to have jurisdiction under Article III. Thus, the fact that the IHSAA may require Snider High School to forfeit team victories or return team awards does not give this court jurisdiction to hear an appeal where Snider is not a party.

*Id.* at 788; *see also Johnson v. Florida High Sch. Activities Ass'n, Inc.,* 102 F.3d 1172, 1173 (11th Cir.1997) (relying on *Jordan* and reaching the same conclusion in a case pre-

senting similar facts); WRIGHT, MILLER, & COOPER, *supra,* § 3533.1, at 149 n. 17 (2d ed. Supp.1996) (stating that "[t]he blend of standing with mootness is nicely illustrated by *Jordan* "). Because the school district is not a party to the appeal in the present dispute, if there is a live controversy at all, it must be between McPherson and the MHSAA.

The majority states that a live controversy exists between McPherson and the MHSAA because McPherson has an interest in preventing the MHSAA from erasing his team's victories and his own performances.[4] At the least, it should be noted that the cases are in conflict as to whether these factors alone imbue a plaintiff with enough of a stake in the outcome to satisfy Article III. *Compare Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 928 (8th Cir.1994) (controversy regarding eligibility of high school basketball player not moot when the athletic association intended to sanction the school district), *with Jordan,* 16 F.3d at 788 (controversy moot when the plaintiff merely had participated on the team and had not achieved any individual records). The relevant inquiry can be phrased as follows: if the MHSAA were to force Huron High School to forfeit the games in which McPherson competed, would McPherson have standing to bring an action contesting this sanction? Although valid arguments exist to support either an affirmative or negative answer to this interesting question, I believe the present dispute is moot regardless of which answer is adopted.

"[I]t is elemental that there must be parties before there is a case or controversy." *Ellis v. Dyson,* 421 U.S. 426, 434, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975). Indeed, "[t]here can be no doubt that an action is mooted if the plaintiff voluntarily withdraws." WRIGHT, MILLER, & COOPER, *supra,*

---

4. The record in this case contains virtually no evidence regarding either McPherson's individual performances or his team's record. In its appellate brief, the MHSAA asserts that McPherson participated in fourteen games during the period in which the injunction was in effect, that Huron High School was victorious in two of these games, and that McPherson was the second-leading scorer on the team. Appellant's Br. at 5–6. At oral argument, counsel for the

MHSAA informed the court that McPherson averaged 6.8 points per game. Nowhere does the MHSAA contend that McPherson obtained any individual records. *Cf. Jordan,* 16 F.3d at 788 n. 3 ("While it is not entirely clear, we assume that the word 'records' refers to achieving the highest individual performance level in several recognized statistical categories such as scoring and rebounding.").

§ 3533.2, at 231 (2d ed.1984). Although McPherson has not formally withdrawn from this dispute, concessions by his counsel at oral argument come about as close to a withdrawal as I can imagine. McPherson's counsel began her argument by stating: "This issue is moot with respect to my client." At another point in the argument, she stated that McPherson had no further interest in continuing the injunctions. In light of these explicit concessions and McPherson's counsel's unwavering position that this case is moot, I cannot comprehend how we can vest McPherson with a stake in the outcome that he no longer desires to hold. While a formal withdrawal by McPherson would have sent an even more emphatic message regarding his interest in this matter, there is no requirement that a party who no longer maintains any interest in an action must withdraw before a court can declare the action moot. *See, e.g., Ellis,* 421 U.S. at 434, 95 S.Ct. at 1696 (stating that, because the plaintiffs no longer showed any visible interest in the litigation, "it is highly doubtful that a case or controversy could be held to exist"); *Jordan,* 16 F.3d at 788–89 (dismissing case as moot when plaintiff had only argued for a finding of mootness and had not dismissed the matter); *Martinez v. Winner,* 800 F.2d 230, 231 (10th Cir.1986) ("The plaintiff has directed his counsel to withdraw from active participation and to conduct no additional business on his behalf in this case.... There can be no live controversy without at least two active combatants.").

As explained above, the case is moot now with regard to plaintiff McPherson; the school district is not a participant in this appeal; and there is no other appellee defending the injunction. This presents us with the absence of an Article III case or controversy at this stage of the litigation.

We are now faced with both the absence of an adversary process and the uncertainty whether a current dispute even exists. We should recognize, however, that the school district, while not a party to this appeal, is still a named party in the action in district court. Although named as a defendant along with the MHSAA, the school district has sided with McPherson in this matter. The school district presumably did not appeal from the injunction because it would like the injunction to continue.[5] After vacating the injunction restraining the defendants from preventing McPherson from athletic participation on the ground of mootness, we should, therefore, remand the remaining matter—the injunction prohibiting the MHSAA from penalizing the school district— to the district court so that that court can determine whether the school district remains an interested party in the litigation and, if so, then can afford the parties the opportunity to align themselves according to their real interests in this dispute.

Before we can rule on the merits of the preliminary injunction restraining the MHSAA from penalizing the school district, we must be satisfied that an actual dispute continues between interested parties. We cannot assure ourselves of this requirement until the district court summons in the school district and ascertains its current litigation posture. Only if the school district objects to dissolution of the remaining preliminary injunction and fights to retain it can there be the constitutionally requisite case or controversy under Article III warranting a decision on the merits by this court or any other court. Because this action is moot with respect to McPherson, if the school district wishes to continue the injunction, its participation in this matter is critical to the adversary process. If, however, the school district

---

**5.** McPherson recognized early on that the school district was likely to support his position. His complaint provides in relevant part: "While Plaintiff believes that [the district] will not be adverse to Plaintiff's requests for relief, [the district] is named as a defendant in order to permit this Court to protect [the district] from the imposition of penalties by the MHSAA, and to permit this Court to effect complete injunctive relief in the event the Court rules in Plaintiff's favor." J.A. at 152 (Plaintiff's Compl. ¶ 4). In light of the fact that the school district sided with McPherson at the district court level, it would have been wise for the MHSAA to have filed a cross-claim against the school district. At oral argument, the MHSAA contended that a conclusion of mootness with respect to this appeal would jeopardize its ability to have the merits of its arguments and rules considered. This concern largely would have been alleviated, however, had the MHSAA taken the simple step of filing a cross-claim—a step that would have placed all interested parties before this court on appeal. Alternatively, the MHSAA could have named the school district as an appellee on appeal.

is not adverse to the MHSAA, then the entire controversy is moot and the remaining injunction should be vacated promptly by the district court. At that point, the MHSAA could decide to sanction the school district and/or high school for McPherson's participation, and there might then exist an interested party or parties to challenge the sanction. A court of competent jurisdiction then could rule on the merits. In other words, numerous channels exist through which the MHSAA can have the merits of its relevant rules and arguments considered.

The majority may believe that its decision to address the merits at this time is supported by notions of judicial economy. Our judicial system is constitutionally limited, however, and we cannot act where we lack jurisdiction under Article III. The majority, by reaching out to resolve the merits, ignores its responsibility to decide only those cases permitted by Article III of the Constitution. With the case moot as to McPherson, and the school district not a party to the appeal, we lack jurisdiction to reach the merits. In this situation, we should vacate the injunction regarding McPherson and remand to the district court to determine whether the remainder of the litigation also lacks the constitutionally required case or controversy. I respectfully dissent.