Appellee's Br. at 20.  Nothing more is reported.  When asked at his deposition if he had reason to believe that other players heard this conversation, John replied, "I really don't know . . . .  There were a few others out there, but I'm not sure if they heard.  Possibly." John Doe Dep. at 17; J.A. at 450. John further admitted that he had not asked any of the other players if they had overheard the conversation as well.  John Doe Dep. at 17-18; J.A. at 450-51.  We find this to be insufficient evidence as a matter of law that anyone else heard the conversation.

For these reasons, we find there was no violation of John Doe's rights under the Act.  Any disclosure is protected by the exceptions under the Act.  Moreover, there is no proof that anyone other than John Doe, Chapman, and Gibson were aware of the conversation concerning John Doe's medical status.  We therefore affirm the district court's grant of summary judgment on plaintiff's Family Education Rights and Privacy Act claim.

### IV.  Plaintiff's Due Process Claim

Lastly, since we find that John Doe has suffered no deprivation of his rights under § 504 of the Rehabilitation Act, the ADA, or the Family Education Rights and Privacy Act, we agree with the court below that John suffered no violation of his due process rights as guaranteed by the Fourteenth Amendment.

* * *

Based on the foregoing reasons, we agree with the district court that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law. Defendants actions did not violate John Doe's civil rights under § 504 of the Rehabilitation Act, the ADA, or the Family Education Rights and Privacy Act.  We, therefore, AFFIRM the judgment of the district court.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0176P (6th Cir.)
File Name:  00a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

MARY DOE; JOHN DOE, by
and through his next friend,
Mary Doe,
          *Plaintiffs-Appellants,*

          *v.*

WOODFORD COUNTY BOARD
OF EDUCATION; WILLIAM S.
FOLEY, Dr., Chairperson and
his successor, in his official
capacity as member of the
Woodford County Board of
Education; AMBROSE
WILSON, IV, and his
successor, in his official
capacity as member of the
Woodford County Board of
Education; MARGIE
CLEVELAND, and her
successor, in her official
capacity as member of the
Woodford County Board of
Education; DAVID MOORE,
and his successor, in his
official capacity as member of

No. 99-5369

the Woodford County Board of Education; P. T. VANCE, and his successor, in his official capacity as member of the Woodford County Board of Education; CHARLES L. DOWLER, Dr., in his individual capacity, and his successor, in his official capacity as Superintendent of the Woodford County Public Schools; CORLIA LOGSDON, and her successor, in her official capacity as Section 504 and ADA Coordinator for the Woodford County Public Schools; ROY CHAPMAN, in his individual capacity, as Principal, Woodford County Middle School; MIKE BURKICH, in his individual capacity, as Principal, Woodford County Middle School; GENE KIRK, in his individual capacity, and his successor, in his official capacity as Head Basketball Coach, Woodford County High School; BOBBY GIBSON, in his individual capacity, and his successor, in his official capacity as Assistant Basketball Coach, Woodford

including "other school officials, including teachers within the educational institution . . .," who have been determined to have a legitimate educational interest in the child. 20 U.S.C. § 1232g(b)(1)(A). An educational institution also "may disclose personally identifiable information from an educational record to appropriate parties" if it is necessary to protect the health or safety of the student or others. 34 C.F.R. § 99.36. While "personally identifiable information" is narrowly defined by the Act's regulations as including only the student's name, parent's name, the student's or parent's address, social security number, or other information that would make the student's identity easily traceable, and may not include a suggestion to review a student's medical records on file with the school, the exception does reveal Congress' intention to allow disclosure when there are genuine health or safety concerns for the student or others. *See* 34 C.F.R. § 99.3.

Plaintiff argues the fact that John and other basketball players heard Chapman's "disclosure of information" effectively rules out any argument that the conversation is covered by any exceptions. We find based on the record that plaintiff fails to provide anything more than a scintilla of evidence to support the claim that other players overheard the conversation. In reviewing grants of summary judgment, "the mere existence of a scintilla of evidence" in support of the plaintiff's position is insufficient to overturn a grant of summary judgment. There must be evidence on which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). As pointed out in defendant's brief, the following is what John testified as overhearing:

Chapman: What about [John Doe]?

Gibson: What about him?

Chapman: Well, you might want to check his medical records to see if everything is okay to play.

defendants faced potential liability from other students and parents if they allowed John to play on the team and another student accidently became exposed to John's contagious condition. Under the circumstances, defendants acted quite appropriately when they placed John on "hold" status over a brief three week period while defendants decided how they should proceed. According to principal Burkich's memorandum dated November 11, 1996, it appears that after careful consideration and weighing of all options, defendants decided to allow John to participate fully on the team with no further restrictions. It is at this time John, by his own volition, chose to no longer remain a member of the team. We therefore find no violation of John's rights as secured by the Rehabilitation Act or the ADA and affirm the grant of summary judgment for the defendants. We pretermit any issue concerning exhaustion of administrative remedies under the Rehabilitation Act and the ADA. The district court did not reach this issue, and we have chosen to review the district court's decision on the merits.

### III. Plaintiff's § 1983 action for violation of the Family Education Rights and Privacy Act

The Family Education Rights and Privacy Act, 20 U.S.C. § 1232g, also referred to commonly as the Buckley Amendment, protects educational records or personally identifiable information from improper disclosure. The pertinent provision reads:

> No funds shall be made available under any applicable program to any education agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information . . . ) of students without the written consent of their parents to any individual, agency, or organization . . . .

20 U.S.C. § 1232g(b)(1).

Nonetheless, there are exceptions which allow disclosure without written consent to certain people, among these

County High School,                 !
        *Defendants-Appellees.*      !
                                      B

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 97-00105—Henry R. Wilhoit, Jr., Chief District Judge.

Argued: May 4, 2000

Decided and Filed: May 26, 2000

Before: MERRITT, CLAY, and CUDAHY[*], Circuit Judges.

_____

### COUNSEL

**ARGUED:** Edward E. Dove, Lexington, Kentucky, for Appellants. Robert L. Chenoweth, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Edward E. Dove, Lexington, Kentucky, for Appellants. Robert L. Chenoweth, Patricia Todd Bausch, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellee.

_____

### OPINION

_____

MERRITT, Circuit Judge. Plaintiff, Mary Doe, on behalf of her son John Doe, charges that defendants, Woodford County Board of Education, individual members of the board, and individual principals/teachers, violated § 504 of the

_____

[*]The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

Rehabilitation Act, 29 U.S.C. § 794, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, the Family Education Rights and Privacy Act, 20 U.S.C. § 1232g, as well as due process rights when defendants placed John Doe, a member of the Woodford County High School junior varsity basketball team, on "hold" status pending the receipt of a medical clearance from his doctor. John Doe is a hemophiliac and a carrier of the hepatitis B virus. The district court granted defendants' motion for summary judgment on all of plaintiff's claims. Plaintiff now appeals, and upon review we affirm the judgment of the district court.

## I.  Facts

John Doe was diagnosed with hemophilia when he was four months old, and at the age of five, it was determined that he suffered from hepatitis B. Despite John's illness, he has participated in athletics throughout his life without incident. In 1996, while a freshman at Woodford County High School, he became a member of the school's ninth grade junior varsity basketball team. The school had adopted a "no-cut" policy for ninth graders wishing to play on the team. In other words, any ninth grader wishing to play on the junior varsity team was automatically selected to be a member. John therefore began practicing with the team.

On the afternoon of October 20, 1996, a few days after the team began practicing, defendant Roy Chapman, principal of Woodford County Middle School, noticed John in the gym practicing with the team. Chapman, who was aware of John's medical condition, approached Bobby Gibson, the team's coach and suggested to Gibson that he check John's medical records on file with the school to see if it was appropriate for him to play. According to John, he overheard this conversation between Chapman and Gibson and alleges other players heard the conversation as well. This allegation serves ground for plaintiff's Family Education Rights and Privacy Act violation.

safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Id.*

*Montalvo*, 167 F.3d at 876. In determining such a threat, citing 28 C.F.R. § 36.208(c) as well as *Arline*, 480 U.S. at 287-288, the *Montalvo* court held that one cannot rely on stereotypes or generalizations about the effects of a disability to determine if a disability poses a threat, but rather *must make individual assessments based on reasonable judgment* relying on current medical knowledge or objective evidence. *Montalvo*, 167 F.3d at 876. Under these guidelines, we find that defendants in this case were indeed attempting to make such a determination. Defendants never actually removed John Doe from the junior varsity basketball team, but simply placed him on "hold" status while they waited for medical direction as to how to proceed. It is entirely reasonable for defendants to be concerned and arguably were obligated to be concerned with limiting risk of exposure of any contagion to others as well as limiting any injury that John may suffer. In an effort to ensure that John's participation in practice would not pose a threat to the safety and well being of John as well as other players, the school requested plaintiff to present some objective medical evidence to that effect. After receiving a very general letter from John Doe's doctor, defendants asked for a more definitive statement as to the safety of John's participation on the team. For purposes of liability, it does not matter that defendants eventually determined, according to its inter-office memorandum, that John should be allowed to fully participate on the basketball team. Rather, defendants, during this "hold" status period, were simply trying to balance the need of protecting the public health with John's rights not to be treated differently due to his disability.

The facts of this case suggest that defendants were in a catch-22 situation. On one hand, defendants had to be aware of possibly infringing upon John's civil rights under the Rehabilitation Act and the ADA if they excluded John from participation on the basketball team. On the other hand,

other basketball teams without incident. Additionally, defendants admit that its junior varsity basketball program was operating under a "no cut" policy, meaning that any ninth grade student wishing to play was selected. Nonetheless, as an exception, a disabled person may not be "otherwise qualified" under both acts, and thus may be excluded from participation in a program, if his or her participation is a direct threat to the health and safety of others. *See Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 287-88, 107 S. Ct. 1123, 94 L. Ed. 2d 307, (1987) (setting forth criteria for determining, under § 504 of the Rehabilitation Act, if a tubercular teacher posed a significant risk to the school community) (direct threat exception later codified in 42 U.S.C. § 12182(b)(3)). We find that defendants were attempting to make such a determination when they placed John on "hold" status and that they may not be found liable for discrimination during this interim period.

The Fourth Circuit in *Montalvo v. Radcliffe*, 167 F.3d 873 (4th Cir. 1999), discusses the direct threat exception in the context of Title III of the ADA, but its discussion is relevant for our purposes. In that case the Fourth Circuit, finding that a disabled child posed a threat to the health and safety of others, held that defendant did not violate the ADA when it excluded a child carrying the human immunodeficiency virus (HIV) from a traditional Japanese style martial arts school where the risks for bloody, though minor, injuries were high. *See Montalvo*, 167 F.3d at 874-75. That court found:

Recognizing that the need to protect public health may at times outweigh the rights of disabled individuals, Congress created a narrow exception to this broad prohibition against discrimination based on disability in places of public accommodation. Thus, a place of public accommodation is entitled to exclude a disabled individual from participating in its program "where such individual poses a direct threat to the health and safety of others." 42 U.S.C. § 12182(b)(3). The Act defines "direct threat" as "a significant risk to the health and

The following day, Gibson checked John's school medical records and discovered a counselor's physical form stating that the student "[s]hould not engage in activities which would put him at increased risk for physical injury." On the back of this form, Gibson read that John suffered from hemophilia and hepatitis B. Gibson then met with his overall supervisor, defendant Mike Burkich, principal of the high school, and sought advice concerning John's condition and his participation on the basketball team. Burkich instructed Gibson to place John's status as a player on "hold" and seek medical direction and clearance for physical activities from John's doctor. Shortly after the decision was made to place John on "hold" status, Gibson informed John that he could not practice with the team and offered John the opportunity to be the team's manager.

After John's mother learned of what occurred, a meeting was held on October 26, 1996, between John's mother, Mary Doe, Coach Gibson, and the school's counselor, Allyson Lusby, concerning his "hold' status with the team. Mary Doe offered to provide the school with any documentation needed to allow John to play on the school's team. The meeting ended with an understanding that John would be allowed to play, but the school needed something from a medical professional indicating that it would be safe for John to play. John then returned to practice, but was told to sit on the sidelines for certain drills. Later in the week, he was again removed from practice and asked again about becoming the team's manager.

Another meeting was held between Mary Doe and school officials October 30, 1996, this time with Gibson, Lusby, Principal Burkich, and defendant Gene Kirk, head basketball coach for the high school. They discussed the possible risks presented by John's afflictions, and the officials decided that John would continue to be placed on "hold" status until they received a statement from a medical doctor on whether it was appropriate for John to fully participate on the team. The officials noted that John's membership on the team was never

terminated; rather John would simply not be allowed to participate fully in practice until receipt of a medical statement authorizing his participation.

On November 1, 1996, coach Gibson received a facsimile from Dr. Ardis Hoven, a physician who was treating John's hepatitis condition. His letter stated as follows:

Mr. [John Doe] has been under my care at the Lexington Clinic and his mother has requested a letter regarding his status regarding basketball [sic].
I have some reservations about [John's] health but I think overall, he is capable of playing basketball. He does have hemophilia which is going to put him at some risk for difficulties. Your consideration regarding this matter is greatly appreciated.

Unsatisfied with the vagueness and generality of this letter, Coach Gibson continued John's "hold" status until more was learned about how to proceed. Then on November 11, 1996, principal Burkich sent an interoffice memorandum to coach Kirk, instructing Kirk to treat John like all other players, despite his medical condition, and to allow John to practice with the team immediately. John or his mother did not receive any notice of this memorandum.

Unhappy with how the school was handling his situation and his concerns about being treated differently than other student athletes, John decided that he no longer wanted to play for the junior varsity team. Learning of her son's decision, Mary Doe organized a final meeting between herself and school officials on November 12, 1996, to express her dismay with how the school had handled her son's situation and hopefully point out the deficiencies the school had in dealing with the kinds of problems presented by a student with these types of disabilities. Mary Doe then informed school officials of John's decision to no longer play basketball for the junior varsity team. Neither Mary nor John

were ever informed of Burkich's November 11 memorandum. Plaintiff then filed this lawsuit.

## II.  Plaintiff's claims for violation of § 504 of the Rehabilitation Act and Title II of the ADA

Plaintiff alleges that defendants violated § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. Section 504 provides that "no otherwise qualified individual with a disability... shall, solely by reason of her or his disability be excluded, from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Federal courts, including the Sixth Circuit, have held that because the purpose, scope, and governing standards of the "acts are largely the same, cases construing one statute are instructive in construing the other." *McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453, 460 (6th Cir. 1997). As a result we will discuss plaintiff's Rehabilitation Act claim and plaintiff's ADA claim together.

At first glance, it appears that John is an "otherwise qualified" disabled person under § 504 of the Rehabilitation Act and Title II of the ADA. To be qualified under each act, the plaintiff must simply show that he or she is qualified to perform the function with or without reasonable accommodation by the defendant. *See Burns v. City of Columbus*, 91 F.3d 836, 841 (6th Cir. 1996); *Monette v. Electronic Data Systems Corp.*, 90 F.3d.1173, 1178 (6th Cir. 1996). Plaintiff throughout discovery has argued that John is qualified to play on the basketball team without accommodation, and there has been no challenge to evidence presented by the plaintiff regarding his past participation on