181 F.3d 840 (7th Cir. 1999)
 ERIC WASHINGTON and CENTRAL CATHOLIC HIGH SCHOOL, Plaintiffs-Appellees,
v.
INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INCORPORATED and ROBERT B. GARDNER, Commissioner of the Indiana High School Athletic Association, Incorporated,
Defendants-Appellants.
 No. 99-1003
 United States Court of Appeals, Seventh Circuit
 Argued February 22, 1999
Decided June 23, 1999
 
 Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. No. 98 C 58--Allen Sharp, Judge.[Copyrighted Material Omitted]
 Before BAUER, RIPPLE and DIANE P. WOOD, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Eric Washington and Central Catholic High School obtained a preliminary injunction in the district court enjoining the Indiana High School Athletic Association ("IHSAA") from denying Mr. Washington athletic eligibility for the second semester of the 1998-99 school year. The IHSAA appeals. We affirm the district court's decision to grant the preliminary injunction.[1]
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 Mr. Washington is a learning disabled student at Central Catholic High School ("Central Catholic") in Lafayette, Indiana. Throughout elementary school, he had been allowed to advance to the next grade despite academic insufficiency. He was held back, however, in the eighth grade. During the first semester of the 1994-95 academic year, while he was repeating the eighth grade, he continued to receive failing grades. School officials then decided that he might do better if he stayed with his class, and they therefore advanced him to the ninth grade at Lafayette Jefferson High School at the beginning of the second semester during the 1994-95 academic year. In this new environment, Mr. Washington continued to fail during that semester and throughout the following academic year. Early in the 1996-97 academic year, a school counselor suggested that Mr. Washington drop out of high school. Mr. Washington took that advice.
 
 
 4
 In the summer of 1997, Mr. Washington participated in a three-on-three basketball tournament sponsored by Central Catholic. At the tournament, Mr. Washington met the coach of the Central Catholic basketball team, Chad Dunwoody. Mr. Dunwoody was also a teacher at the school. After conversations with Dunwoody, Mr. Washington decided to attend Central Catholic. Mr. Washington entered school and began playing basketball. Mr. Dunwoody, who also became Mr. Washington's academic mentor at Central Catholic, suggested that Mr. Washington be tested for learning disabilities. Although Mr. Washington had previously been tested and found not to be learning disabled, a January 1998 test indicated that he was in fact learning disabled.
 
 
 5
 The IHSAA has a rule that limits a student's athletic eligibility to the first eight semesters following the student's commencement of the ninth grade ("the eight semester rule"). The purposes of that rule, according to the IHSAA, include discouraging redshirting,[2] promoting competitive equality, protecting students' safety, creating opportunities for younger students and promoting the idea that academics are more important than athletics. Under the rule in question, because Mr. Washington entered the ninth grade during the second semester of the 1994-95 academic year, he would no longer be eligible to play basketball in the second semester of the 1998-99 year (nine semesters after he began the ninth grade).
 
 
 6
 Central Catholic applied for a waiver of the eight semester rule for Mr. Washington. It requested that the IHSAA not count the semesters that he was not enrolled in any high school for purposes of eligibility under the eight semester rule. It requested a waiver under IHSAA Rule C- 12-3, which allows an exemption "if a student is injured which necessitates the student's complete withdrawal from the school or prohibits enrollment in the school for that semester, and the student does not receive any academic credit for that semester." R.15, Ex.5. Central Catholic also requested a waiver under IHSAA Rule 17-8, referred to by the parties as "the hardship rule." That rule allows the IHSAA not to enforce a rule if strict enforcement in the particular case would not serve to accomplish the purpose of the rule, the spirit of the rule would not be violated, and there is a showing of undue hardship in the particular case. Even though it had granted waivers for physical injuries in the past, the IHSAA denied Mr. Washington's application. Mr. Washington appealed the denial to the IHSAA Executive Committee, which denied the appeal.
 
 
 7
 Mr. Washington will be ineligible to play high school basketball during the 1999-2000 school year because his participation will violate another eligibility rule that limits the maximum age at which a student athlete may compete ("the age limit rule"). No challenge is made to that rule in this lawsuit. Rather, the focus is exclusively on the eight semester rule; it is challenged on the ground that failure to grant a waiver of the eight semester rule in this case violates Title II of the Americans with Disabilities Act, 42 U.S.C. sec. 12132.
 
 B. The District Court's Order
 
 8
 The district court granted a preliminary injunction against the enforcement of the Rule against Mr. Washington.
 
 
 9
 The court first addressed the issue of irreparable harm and stated:
 
 
 10
 This court has no difficulty determining that this plaintiff will suffer irreparable harm for which he has no adequate remedy at law if this injunction is denied. The loss of the remainder of the basketball season, and with that, most likely the loss of any future playing opportunities and the loss of the desire to continue academically, are harms which cannot be repaired, for which Eric cannot be adequately compensated.
 
 
 11
 R.17 at 4.
 
 
 12
 The court next considered whether the plaintiffs had demonstrated a substantial likelihood of success on the merits with respect to its claims under sec. 504 of the Rehabilitation Act, 29 U.S.C. sec. 794(a),[3] and Title II of the Americans with Disabilities Act, 42 U.S.C. sec. 12132. The court then noted that there are three requirements that are identical to both claims: (1) Mr. Washington must suffer from a disability, (2) he must be "otherwise qualified" to participate in athletics, and (3) he must demonstrate that he is being excluded from playing basketball by reason of his handicap.
 
 
 13
 The first of these prongs was not at issue. The IHSAA did not dispute that Mr. Washington suffers from a disability.[4] Addressing the second and third prongs together, the district court took the view that they combine into an inquiry of whether the requested relief constitutes a reasonable modification of the IHSAA's rule. The district court then discerned two approaches to this issue in the case law--one focusing on whether the rule itself, without reference to a particular individual, is generally fundamental and essential, and another focusing on whether the individual waiver requested would do damage to the purposes behind the rule. Choosing to apply the second approach, the court held that waiver of the rule in Mr. Washington's case would be a reasonable modification because there would be no conflict with the purposes behind the eight semester rule. The court pointed out that there was no redshirting in this instance and that, to the extent that the Rule was intended to emphasize the primacy of academics, the record supported the conclusion that Mr. Washington's participation in the athletic program had increased his self-esteem and, consequently, his academic achievement. Safety and competitive equality concerns, continued the court, were adequately addressed by the age rule that still applied to Mr. Washington.
 
 
 14
 After holding that the plaintiffs had established a substantial likelihood of success on the merits, the court then held that the potential harm to the IHSAA would be insignificant if the preliminary injunction were granted. It rejected the IHSAA's argument that the IHSAA would be flooded with cases; Mr. Washington was the first student with a learning disability in at least fourteen years to bring such a waiver request. The court also believed that the fact that another student would be displaced by Mr. Washington's presence on the basketball team did "not over-balance the scale against the well-documented harm to Eric if his eligibility is terminated." R.17. Moreover, the court noted that the public's interest in maintaining a level field of competition would not be overly affected.
 
 
 15
 Subsequent to the district court's decision granting the motion for preliminary injunction, Mr. Washington's basketball season ended.
 
 II
 DISCUSSION
 A.
 
 16
 Although neither party has briefed the issue whether the completion of Mr. Washington's basketball season renders moot all issues in the lawsuit, we must address this issue because it is jurisdictional. See Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1012, 1020-21 (1998). There must be an actual controversy at all stages of this court's review. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980); Jordan v. Indiana High Sch. Athletic Ass'n, 16 F.3d 785, 787 (7th Cir. 1994).
 
 
 17
 We hold that an actual controversy still exists despite the end of the basketball season because Central Catholic is still a party to the litigation.[5] Under IHSAA Rule 17-6:
 
 
 18
 [The IHSAA may] impose retroactive penalties on student athletes (and their schools) who are declared ineligible by the IHSAA but are permitted to participate in interschool competition in accordance with a court restraining order or injunction. If the injunction is subsequently vacated, stayed or reversed, the IHSAA may strike individual and team records, require forfeit of victories won by the team, or require return of individual and team awards earned while the student participated.
 
 
 19
 Crane v. Indiana High Sch. Athletic Ass'n, 975 F.2d 1315, 1318 (7th Cir. 1992). In Crane, noting that the student could lose individual awards, this court held that the student's claims were not moot. By contrast, this court dismissed a challenge to the IHSAA eight semester rule in Jordan, 16 F.3d at 788, because the high school was not a party to the lawsuit. The court reasoned that the student athlete's season had concluded and he had not received any IHSAA- recognized awards; therefore, the sole plaintiff's interest in the case had become moot. In this case, Central Catholic is still a party to this lawsuit and has a continuing interest in the case. The school team's victories and other records may be stricken or forfeited if the injunction is vacated. We therefore have jurisdiction.
 
 B.
 1. Applicable Standards
 
 20
 In deciding whether to grant a preliminary injunction, a district court must first determine whether the moving party has demonstrated some likelihood of succeeding on the merits and an inadequate remedy at law if preliminary relief is not granted. If the movant has demonstrated both of these factors, the court must then consider the irreparable harm that the nonmovant will suffer if the preliminary relief is granted, balanced against the harm to the movant. Finally, the court must weigh the public interest by considering the effect of granting or denying relief on nonparties. See Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F.3d 1287, 1291 (7th Cir. 1996).
 
 
 21
 In Lawson Products v. Avnet, 782 F.2d 1429 (7th Cir. 1986), this court set forth in detail the appropriate methodology for review of a district court's decision to issue a preliminary injunction. In that case, we stressed that, although the applicable standard of review is often described under the shorthand of "abuse of discretion," appellate review "must vary with the nature of the lower court decision." Id. at 1437. This more nuanced approach is necessary because, as we have just noted, the district court's "preliminary injunction decision involves the resolution of a number of different issues, some of which are non-discretionary; others, like the final weighing and the balancing of the equities, are classically left to the discretion of the district judge." Id. Consequently, factual determinations are reviewed under the clearly erroneous standard; the necessary legal conclusions are given de novo review. The district court's balancing of harms is a highly discretionary matter and therefore one to which this court must give substantial deference.
 
 2. Likelihood of Success on the Merits[6]
 
 22
 We turn first to whether the district court was correct in its determination that the plaintiffs have demonstrated a "likelihood of success on the merits." In the preliminary injunction context, a "likelihood of success" exists if the party seeking the injunctive relief shows that it has a "better than negligible" chance of succeeding on the merits. Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1114 (7th Cir. 1997).
 
 
 23
 a. Whether the IHSAA excluded Mr. Washington from playing basketball "by reason of" his disability.[7]
 
 
 24
 To receive protection under Title II of the ADA, the plaintiffs must establish that the IHSAA rendered Mr. Washington ineligible to play "by reason of" his disability.[8] The IHSAA contends that Mr. Washington has not presented any evidence that the IHSAA discriminated intentionally on the basis of disability. It further submits that Mr. Washington's ineligibility stems not from his disability but from the application of a facially neutral eight semester rule and the passage of time. In reply, the plaintiffs contend that they need not prove intentional discrimination.[9] They further submit that they must show only that, but for Mr. Washington's disability, he would be eligible.
 
 
 25
 (i)
 
 
 26
 We cannot accept the suggestion that liability under Title II of the Discrimination Act must be premised on an intent to discriminate on the basis of disability. This court previously has recognized that a plaintiff making a claim under the Rehabilitation Act need not prove an impermissible intent. See McWright v. Alexander, 982 F.2d 222, 228-29 (7th Cir. 1992) (holding that disparate impact claims are cognizable under the Rehabilitation Act). As we have noted, this and other circuits interpret sec. 504 of the Rehabilitation Act and Title II of the ADA as coextensive, except for differences not relevant here. See supra note 6. Although the Supreme Court has not held squarely that a plaintiff need not prove discriminatory intent, it has implied that requiring such proof would be contrary to the intent of Congress. See Alexander v. Choate, 469 U.S. 287, 295-97 (1985). In Choate, the Court indicated that there is strong support in the legislative history for the proposition that the Rehabilitation Act was not intended to prohibit solely intentional discrimination. "Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference--of benign neglect." Id. at 296. The Court also noted that "much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent." Id. at 296-97, 105 S.Ct. 712. Moreover, the other circuits that have considered the issue have taken the view that a plaintiff need not prove an impermissible intent under sec. 504 of the Rehabilitation Act and Title II of the ADA. See McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 460 (6th Cir. 1997);[10] Crowder v. Kitagawa, 81 F.3d 1480, 1483-84 (9th Cir. 1996); Norcross v. Sneed, 755 F.2d 113, 117 n.4 (8th Cir. 1985); Pushkin v. Regents of the Univ. of Colorado, 658 F.2d 1372, 1385 (10th Cir. 1981); Prewitt v. United States Postal Serv., 662 F.2d 292, 306 (5th Cir. 1981).
 
 
 27
 In our view, the Sixth Circuit outlined correctly in McPherson the various methods of proof in sec. 504 Rehabilitation Act or Title II ADA claims: discrimination under both acts may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people. Here we deal with the second approach. There is substantial support for basing a cause of action on the failure to provide reasonable accommodation. Considering a claim under sec. 504 of the Rehabilitation Act, the Supreme Court implied the validity of this method of proof of discrimination in Southeastern Community College v. Davis, 442 U.S. 397 (1979), when it stated that "situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory." Id. at 413. In Choate, the Court, after quoting this passage, stated that Davis struck a balance between requiring reasonable modifications and fundamental or substantial modifications. See 469 U.S. at 300. The Court further indicated its understanding that the issues of reasonable modification and discrimination are linked when it stated:
 
 
 28
 [T]he question of who is "otherwise qualified" and what actions constitute "discrimination" under the section would seem to be two sides of a single coin; the ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped.
 
 
 29
 Id. at 300 n.19.
 
 
 30
 We note that the method of proving discrimination in disability cases by evidence of failure to provide reasonable modification is also recognized under Titles I and III of the ADA and the Fair Housing Amendments Act of 1988. See 42 U.S.C. sec.sec. 12112(b)(5)(A) & 12182(b)(2)(A)(II); 42 U.S.C. sec. 3604(f)(3). Perhaps most significantly, the ADA's legislative history indicates that the methods of proving discrimination under Titles I and III of the ADA also apply to Title II. The House Report states:
 
 
 31
 The Committee has chosen not to list all the types of actions that are included within the term "discrimination," as was done in titles I and III, because [title II] essentially simply extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to all actions of state and local governments. The Committee intends, however, that the forms of discrimination prohibited by [title II] be identical to those set out in the applicable provisions of titles I and III of this proposed legislation.
 
 
 32
 H.R. Rep. No. 485(II), 101st Cong., 2d Sess. 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367. Therefore, Congress clearly intended the failure- to-accommodate method of proving discrimination to apply to Title II.
 
 
 33
 The approach the Sixth Circuit has taken, and the approach we take, does not completely do away with a discrimination requirement. We simply hold that it is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation. Therefore, we conclude that the plaintiffs need not prove that the IHSAA intended to discriminate on the basis of disability. The statute simply requires that the plaintiffs establish that the defendant's refusal to grant Mr. Washington a waiver was a failure to make a reasonable accommodation.
 
 
 34
 (ii)
 
 
 35
 The IHSAA's argument that Mr. Washington has not been excluded from playing basketball by reason of his disability, but rather by reason of the passage of time, could be interpreted as an argument based on causation rather than an argument based on intent. Such an argument, however, must also fail.
 
 
 36
 There must be a causal connection between the disability and Mr. Washington's ineligibility. The IHSAA submits that no such causality exists and that it is the mere passage of time, and not the disability, that caused Mr. Washington's ineligibility in this case. The IHSAA relies upon McPherson and Sandison v. Michigan High School Athletic Ass'n, 64 F.3d 1026, 1029 (6th Cir. 1995), to support its argument. The portion of the McPherson decision upon which the IHSAA relies states:
 
 
 37
 As is obvious, the plaintiff has no evidence, and has not even suggested, that the formulation or implementation of the MHSAA's eight-semester rule has in any way been motivated by considerations of barring students with learning disabilities from play. As we explained in Sandison with regard to the 19-year age limit at issue there, the regulation is a "neutral rule"--neutral, that is, with respect to disability--and as far as the record shows, is neutrally applied by the MHSAA. Throughout the plaintiffs' first three years of high school, [the age limit rule] did not bar the students from playing interscholastic sports, yet the students were of course learning disabled during those years. It was not until they turned nineteen that [the age limit] operated to disqualify them. Accordingly, we must conclude that the age regulation does not exclude students from participating "solely by reason of" their disability. Sandison, 64 F.3d at 1032. As we concluded, "[t]he plaintiffs' respective learning disability does not prevent the two students from meeting the age requirement; the passage of time does." Id. at 1033. McPherson's claim depends, therefore, upon a showing that the MHSAA could have reasonably accommodated him and refused to do so.
 
 
 38
 McPherson, 119 F.3d at 460. Viewing the Sixth Circuit's "passage of time" holding in context, it is clear that the court was addressing only the first intentional discrimination method of proof, not the issue of causation. Otherwise, the court would not have gone on to discuss independently the alternative method of proof-- the failure to make reasonable modification. Therefore, read in context, the Sixth Circuit's analysis merely indicates that the application of a neutral rule that makes a student ineligible because of the passage of time cannot support a claim for intentional discrimination. The court's analysis does not indicate that the passage of time is the legal cause of the ineligibility.
 
 
 39
 We believe, moreover, that Mr. Washington has met the causation requirement for his claims. The "by reason of" language merely indicates that he must establish that, but for his learning disability, he would have been eligible to play sports in his junior year. See Dennin v. Connecticut Interscholastic Athletic Conference, Inc., 913 F. Supp. 663, 669 (D. Conn.), vacated as moot, 94 F.3d 96 (2d Cir. 1996).[11] Simply stated, Mr. Washington claims that his disability caused him to drop out of school; otherwise he would have been able to play high school basketball. In the absence of his disability, the passage of time would not have made him ineligible. There is ample record evidence to support Mr. Washington's claim. Mark Zello, a school psychologist, testified at the preliminary injunction hearing. He stated that Mr. Washington's learning disability caused him to fail at school, and that students with learning disabilities like Mr. Washington's have a high drop-out rate. Moreover, Zello testified that Mr. Washington has above average intelligence and, without the learning disability, would be fully capable of performing in high school. Under these circumstances, the district court was justified in concluding that, but for Mr. Washington's learning disability, he would not have dropped out of school.[12]
 
 
 40
 b. Whether Mr. Washington is a "qualified individual" under Title II of the ADA
 
 
 41
 (i)
 
 
 42
 To receive protection under Title II of the ADA, Mr. Washington must be a "qualified individual." See 42 U.S.C. sec. 12132. Under Title II, a qualified individual is "an individual with a disability, who with or without reasonable modifications to rules, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity." 42 U.S.C. sec. 12131(2) (emphasis added). Similarly, under the analogous section of the Rehabilitation Act, "'[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap,' . . . with reasonable accommodation." Knapp v. Northwestern Univ., 101 F.3d 473, 482 (7th Cir. 1996) (quoting Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979)).
 
 
 43
 The parties disagree whether waiver of the eight semester rule in Mr. Washington's case constitutes a "reasonable modification." Resolution of this issue turns on whether waiver of the rule would generally be a fundamental alteration to the purpose of the IHSAA rule or would create undue financial and administrative burdens. See School Bd. of Nassau County v. Arline, 480 U.S. 273, 288 n.17 (1987); Davis, 442 U.S. at 412; McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 461 (6th Cir. 1997) (en banc).
 
 
 44
 In determining whether a person is a "qualified individual" and whether the modification is reasonable, a divided panel of one circuit has held that, before the court addresses whether modification of the rule would be a reasonable modification in the specific case at hand, it must determine "whether an individual meets all of the essential eligibility requirements." Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994). Under this approach, even if waiver of a rule would be reasonable under the circumstances of the particular case, the waiver would not be required if the rule itself is generally an essential or necessary eligibility requirement. See id. We think, however, that the better view is to ask whether waiver of the rule in the particular case at hand would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change. See Pottgen, 40 F.3d at 931 (Arnold, C.J., dissenting); Dennin, 913 F. Supp. 663, 668-69; Johnson v. Florida High Sch. Activities Ass'n, 899 F. Supp. 579, 585 (M.D. Fla. 1995), vacated as moot, 102 F.3d 1172 (11th Cir. 1997); University Interscholastic League v. Buchanan, 848 S.W.2d 298, 302 (Tex. Ct. App. 1993).
 
 
 45
 In short, we believe that the analysis of Chief Judge Richard Arnold in dissent in the Pottgen case and of the en banc majority of the Sixth Circuit in McPherson is more compatible with the congressional intent.[13] In analyzing an employment discrimination claim under sec. 504 of the Rehabilitation Act, the Supreme Court has stated:
 
 
 46
 The remaining question is whether [the plaintiff] is otherwise qualified for the job . . . . To answer this question in most cases, the district court will need to conduct an individualized inquiry and make appropriate findings of fact. Such an inquiry is essential if sec. 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns of grantees as avoiding exposing others to significant health and safety risks.
 
 
 47
 School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 (1987) (emphasis added). The ADA regulations similarly indicate that Arline requires an individualized analysis.[14] Moreover, commentators overwhelmingly agree that an individualized inquiry is necessary.[15]
 
 
 48
 We think that the individualized approach is consistent with the protections intended by the ADA. The entire point of Arline's statement that a person is otherwise qualified if he is able to participate with the aid of reasonable accommodations is that some exceptions ought to be made to general requirements to allow opportunities to individuals with disabilities. To require a focus on the general purposes behind a rule without considering the effect an exception for a disabled individual would have on those purposes would negate the reason for requiring reasonable exceptions.
 
 
 49
 (ii)
 
 
 50
 We now turn to an examination of the particular situation before us in this case.
 
 
 51
 At the outset, it must be noted that the eight semester rule that the Sixth Circuit refused to waive in McPherson and the eight semester rule in this case are distinct in a very material respect. The Michigan rule restricts eligibility to eight semesters of enrollment, while the Indiana rule creates ineligibility automatically eight semesters from the first day of enrollment, even if the student was not enrolled for the full eight semesters. Under the Indiana rule, the eligibility "clock" therefore continues to "tick" when a student drops out of school; the clock does not tick for the Michigan student who drops out of school. Notably, Mr. Washington requested only that the semesters that he was absent from school because of his disability not count toward his eight semesters of eligibility; he did not ask that the IHSAA be prohibited from allowing the eligibility clock to run while he was enrolled. Indeed, he is merely asking that the IHSAA apply a rule identical to the rule the MHSAA applies to its students.
 
 
 52
 We believe that the district court was on solid ground in determining that waiver of the eight semester rule in Mr. Washington's case would not create a fundamental alteration of the eight semester rule. Such a minimal request for a rule modification is much more reasonable and less fundamental than the waiver requested in McPherson. The IHSAA's argument to the contrary is particularly unpersuasive because it has granted waivers of the eight semester rule in the past, thereby establishing that waivers do not always work fundamental alterations of the rule. Moreover, none of the dangers that motivated adoption of the rule is present in this case. The primary goals of the rule are to control redshirting, to prevent the preeminence of athletics over academics, and to keep larger, more advanced players from dominating competition. Mr. Washington was clearly not redshirted--nobody was interested in his basketball abilities until he had already left school. Moreover, waiver of the rule in Mr. Washington's case does not indicate that athletics is valued over education. Indeed, waiver of the rule in Mr. Washington's case has promoted his education. Mr. Washington has re- entered school because of basketball, has improved his grades in part due to the influence of basketball and his coach, and is even considering going to college. Application of the eight semester rule to Mr. Washington does not appear to add anything to the protections provided by the IHSAA's age limit rule, which generally limits the size, strength and athletic maturity of student athletes.
 
 
 53
 Nor will the record support the argument that a waiver of the rule in Mr. Washington's case would place an undue administrative or financial burden on the IHSAA. The record indicates that Mr. Washington is the only student athlete to seek a waiver because of a learning disability in more than a decade. The few case-by-case analyses that the IHSAA would need to conduct hardly can be described as an excessive burden. The IHSAA already conducts individualized inquiries into whether student athletes with physical impairments should receive a waiver; requiring such an analysis in disability cases will not be a significant additional burden.
 
 
 54
 In the end, then, McPherson is based upon a case-specific individualized assessment that entertaining a waiver argument under a rule that counted only enrolled semesters, in some of which the student was academically ineligible, would give a green light to redshirting. By contrast, and as conceded by the IHSAA, there was no risk of redshirting in this case. The granting of a waiver to Mr. Washington frustrates no purpose of the rule.[16]
 
 C. Balancing the Interests
 
 55
 The IHSAA also asks that we review the district court's conclusion that the irreparable harm to the plaintiffs outweighed any threatened harm to the IHSAA and the public. This court reviews the district court's balancing of the equities under an abuse of discretion standard and the findings of fact for clear error. See TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 881 (7th Cir. 1997).
 
 
 56
 The district court found that Mr. Washington would be irreparably harmed if he did not obtain an injunction, because if he were not allowed to play, he would lose out on the chance to obtain a college scholarship and he would have a diminished academic motivation. The IHSAA's first argument is that the loss of a potential college scholarship is too speculative to constitute irreparable harm. However, Purdue University basketball coach Gene Keady testified at the preliminary injunction hearing that Mr. Washington would be harmed by an inability to play basketball in his high school games because basketball scouts would not have an opportunity to view him playing. Dunwoody, Mr. Washington's coach and academic mentor, testified to the same effect. The district court's finding is therefore not clear error.
 
 
 57
 The IHSAA also argues that the district court erred in determining that irreparable harm would stem from Mr. Washington's loss of academic motivation if he were declared ineligible. The IHSAA notes that Mr. Washington would not be prohibited from continuing to attend Central Catholic, or any other school, if he had been ineligible to play basketball. The district court did not commit clear error in finding that Mr. Washington would suffer irreparable harm from a lost academic desire. Zello, the school psychologist, testified that basketball is an important part of Mr. Washington's academic success at Central Catholic. Before he started at Central Catholic, Mr. Washington had experienced a career of academic failure due to his learning disability. His lack of self confidence prevented him from performing well academically. By giving him something at which he could excel, basketball improved his confidence in other areas of life, including education. When asked what the consequence would be if Mr. Washington were not allowed to play basketball, Zello stated:
 
 
 58
 I think it would be difficult. This is a child who has been thoroughly frustrated academically, socially, family problems from that, who now gets a taste of success, and then we're going to pull that away from him? . . . I think it would be devastating.
 
 
 59
 Tr. at 39. Dunwoody made a similar statement in his testimony. Moreover, the record indicates that Mr. Washington's grades improved when he started playing basketball, and he lost motivation when the IHSAA determined that he would be ineligible.
 
 
 60
 On the other side of the balance, the IHSAA argues that it would face financial and administrative burdens in determining who is eligible for waiver, that another student-athlete would be displaced by Mr. Washington and that Mr. Washington would change the level of competition. However, the district court's finding that the administrative burden would not be significant is supported by the record; Mr. Washington was the first student with a learning disability to bring such a request within more than a decade. The court also determined that the displacement of another student by Mr. Washington's presence on the basketball team did "not over-balance the scale against the well-documented harm to Eric if his eligibility is terminated." R.17. Moreover, the court noted that the public's interest in maintaining a level field of competition would not be overly affected. The district court's balancing the IHSAA's interests against Mr. Washington's interests was not an abuse of discretion.
 
 Conclusion
 
 61
 For the foregoing reasons, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 We have appellate jurisdiction over this appeal. See 28 U.S.C. sec. 1292(a)(1).
 
 
 [2]
 Redshirting is the practice of slowing a student's academic pace and postponing his initial participation in competitive athletics in order to permit him to gain physical and athletic maturity before beginning his period of eligibility for competitive athletics.
 
 
 [3]
 The court subsequently determined that Mr. Washington could not premise his claim on the Rehabilitation Act because he had failed to establish that the IHSAA received federal financial assistance. The court held, however, that the case could proceed under the ADA. The IHSAA does not dispute that the provisions of Title II of the ADA apply.
 
 
 [4]
 The IHSAA attempted to raise this issue during oral argument. However, it did not raise the issue in its brief in this court; the issue is therefore waived.
 
 
 [5]
 We note that, after the district court enjoined the IHSAA from declaring Mr. Washington ineligible, Central Catholic filed a motion to dismiss itself from the lawsuit because it was "merely a nominal party." R.26. However, Central Catholic participated in the filing of the complaint and was represented by counsel. In the complaint, it requested the preliminary injunction that the district court eventually granted. An appellee that has obtained relief cannot dismiss itself from an appeal. See New Jersey Citizen Action v. Edison Township, 797 F.2d 1250, 1253 n.5 (3d Cir. 1986). Otherwise, the IHSAA would be denied the opportunity to attempt to enforce its rules and require Central Catholic to forfeit its games.
 
 
 [6]
 Although the preliminary injunction was based solely on the ADA, we discuss as well in this section of the opinion cases that interpret the Rehabilitation Act. We have held previously that the standards applicable to one act are applicable to the other. Title II of the ADA was modeled after sec. 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other. See Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d 116, 123 (7th Cir. 1997); see also McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 459-60 (6th Cir. 1997) (en banc); Crowder v. Kitagawa, 81 F.3d 1480, 1483 (9th Cir. 1996) (noting that sec. 12133 of the ADA, 42 U.S.C. sec. 12133, requires that "[t]he remedies, procedures, and rights set forth in the [Rehabilitation Act] shall be the remedies, procedures, and rights" applicable to section 12132 discrimination claims") (internal quotations omitted). The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding, while Title II of the ADA contains no such limitation. Another difference is that the Rehabilitation Act requires that the exclusion be solely by reason of disability, while the ADA requires only that the exclusion be by reason of the disability.
 
 
 [7]
 The district court, relying on Alexander v. Choate, 469 U.S. 287, 300 n.19 (1985), addressed the "by reason of disability" and "qualified individual" requirements as one issue. We agree with the district court that the Supreme Court indicated in Choate that these issues are "two sides of the same coin" and that the ultimate issue is whether the requested relief is a reasonable accommodation. We address the issues separately, however, because the IHSAA has raised separate contentions relating to the two requirements.
 
 
 [8]
 Title II of the ADA provides:
 Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
 42 U.S.C. sec. 12132.
 
 
 [9]
 The IHSAA suggests in its reply brief in this court that the plaintiffs have not raised adequately a claim based on a theory other than intentional discrimination. The IHSAA failed to raise this argument in its initial brief; therefore, it has waived the argument. We do not consider arguments raised for the first time in the reply brief. Moreover, the complaint does not rely on any sort of intentional discrimination. See, e.g., McWright v. Alexander, 982 F.2d 222, 226 (7th Cir. 1992). In any event, the plaintiffs' motion for a preliminary injunction clearly indicated that its theory was not based on intentional discrimination.
 
 
 [10]
 The IHSAA relies upon Sixth Circuit case law to support its argument. However, that case law does not indicate that a plaintiff must prove an impermissible intent. In McPherson, the Sixth Circuit, sitting en banc and considering Title II and sec. 504 challenges to a somewhat similar eight semester rule, stated:
 [T]here are two methods that would allow the plaintiff to demonstrate that the MHSAA's actions were taken because of his disability: either (1) by offering evidence that learning disabilities were actually considered by the MHSAA in formulating or implementing the eight-semester rule, or (2) by showing that the MHSAA could have reasonably accommodated his disability, but refused to do so. In the alternative, it might be possible under the ADA for the plaintiff to rely on a disparate impact theory, but the plaintiff has specifically disavowed any reliance on a disparate impact theory, and it is not necessary for us to explore the availability and contours of such a claim in the ADA context.
 119 F.3d at 460. This passage makes clear that our colleagues in the Sixth Circuit did not believe that a plaintiff had to establish discriminatory intent to establish a violation of Title II of the ADA. The court simply noted that such a path was one possible method of proof. In considering this intent-based method of proof, the Sixth Circuit stated that disabilities were not considered by the Michigan High School Athletic Association in passing its eight semester rule. It is in this context that the court stated that the plaintiff's ineligibility resulted from the passage of time, not the disability.
 Notably, the court did not end its discussion with this first method of proof but went on to consider the second method of proof--whether the IHSAA could have reasonably accommodated the plaintiff, but had refused to do so. Moreover, the court suggested that a disparate impact-type claim may be cognizable, thereby further indicating that an intent element is not required. Under Sixth Circuit case law, therefore, a facially neutral rule adopted for neutral purposes and applied on a neutral basis is not always insulated from review.
 
 
 [11]
 See also Katie M. Burroughs, Learning Disabled Student Athletes: A Sporting Chance Under the ADA?, 14 J. Contemp. Health L. and Pol'y 57, 78 (1997); Gary Lawton, AIDS, Astrology and Arline: Towards a Causal Interpretation of Section 504, 17 Hofstra L. Rev. 237, 259-65 (1989); Adam Milani, Can I Play? The Dilemma of the Disabled Athlete in Interscholastic Sports, 49 Ala. L. Rev. 817, 859-60 (1998).
 
 
 [12]
 The IHSAA argues that this court must give deference to the IHSAA's initial determination that Mr. Washington's learning disability did not cause his absence from school. The IHSAA has waived this argument. It did not raise the issue in its initial brief in this court, and even in its reply brief it does not explain the basis for the finding that Mr. Washington's disability did not cause him to drop out of school. Moreover, we note that the IHSAA relies on a Supreme Court of Indiana case that holds that, under Indiana law, Indiana courts must apply an arbitrary and capricious standard of review to decisions of the IHSAA. See Indiana High Sch. Athletic Ass'n v. Carlberg, 694 N.E.2d 222, 231 (Ind. 1997). This case is clearly inapplicable to our review of the IHSAA's decisions under federal law, and we can discern no basis in Title II of the ADA for treating the IHSAA's finding deferentially.
 
 
 [13]
 The waiver situation that confronted the Sixth Circuit in McPherson prohibited students who had been enrolled for eight semesters from participating in athletics; the Indiana rule, by contrast, counts all semesters, whether or not the student is enrolled. The plaintiff in McPherson sought eligibility for his ninth semester of enrollment; he had not played in several previous semesters because he was declared academically ineligible under his school's standards, which were more strict than the standards of the Michigan High School Athletic Association ("MHSAA"). The Sixth Circuit addressed whether a waiver of the MHSAA eight semester rule would be a reasonable accommodation or whether such a waiver would impose undue financial and administrative burdens or require a fundamental alteration of the program. The court initially noted that the Association's "determination that a rule may sometimes be waived under some circumstances does not mean that the rule, as a general matter, is not 'necessary' to the successful functioning of a sports program." Id. at 461. The court found that a waiver would create a fundamental alteration because the Association's goals of reducing redshirting and promoting the preeminence of education over athletics would be harmed. The court also noted that requiring a case-by-case analysis of which students should be granted waivers would create undue financial and administrative burdens. In this respect, the court found waiver of the eight semester rule to be as unreasonable as waiver of the age rule it considered in Sandison v. Michigan High School Athletic Ass'n, 64 F.3d 1026 (6th Cir. 1995). Notably, the court then turned to a more individualized discussion of the case and stated:
 We are not insensible, however, to the plaintiff's contention that the existence of past waivers makes it inherently unreasonable to require the MHSAA to grant a waiver in this case. However, there are important differences between those cases and this. The only reason McPherson did not participate in basketball during the ninth and tenth grades, and during his first year in the eleventh grade, was that the Ann Arbor school district forbade him to do so because it held him to a higher academic eligibility requirement than was required by the MHSAA. . . . Thus, . . . to allow a waiver under these circumstances would create a highly unfavorable precedent, in which a school district can have control over a player's eligibility, find that player to be ineligible, and then later, when he has physically and athletically matured, find him eligible. In short, to require a waiver here would be to give the green light to school districts and coaches who wish to engage in widespread redshirting.
 Id. at 463.
 To characterize McPherson as espousing the rigid approach of the Eighth Circuit majority in Pottgen, it is necessary to ignore the court's individualized assessment of the risk of redshirting. However, this reading would ignore McPherson's statement that it was "not insensible . . . to the . . . contention that the existence of past waivers makes it inherently unreasonable to require the MHSAA to grant a waiver in this case" and the individualized discussion of the risk of redshirting presented by the facts of that particular case. Id.
 
 
 [14]
 The appendix to the Title II regulations states:
 In School Board of Nassau County v. Arline, 480 U.S. 273 (1987), the Supreme Court recognized that there is a need to balance the interests of people with disabilities against legitimate concerns for public safety. Although persons with disabilities are generally entitled to the protection of this part, a person who poses a significant risk to others will not be "qualified," if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate that risk.
 The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. This is the test established by the Supreme Court in Arline. Such an inquiry is essential if the law is to achieve its goal of protecting disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to legitimate concerns, such as the need to avoid exposing others to significant health and safety risks.
 28 C.F.R. Pt.35, App.A (Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services) (emphasis added).
 
 
 [15]
 See Colleen M. Evale, Sandison v. Michigan High School Athletic Ass'n: The Sixth Circuit Sets up Age Restrictions as Insurmountable Hurdles for Learning-Disabled High School Student-Athletes, 5 Sports Law J. 109, 134 (1998); Mark Freitas, Applying the Rehabilitation Act and the Americans with Disabilities Act to Student-Athletes, 5 Sports Law J. 139, 162 (1998); Milani, supra note 11, at 868-69; Burroughs, supra note 11, at 78; John Wolohan, Are Age Restrictions A Necessary Requirement for Participation in Interscholastic Athletic Programs?, 66 U. Mo. Kansas City L. Rev. 345, 355 (1997) (noting that an individualized analysis is required).
 
 
 [16]
 The Sixth Circuit in Sandison v. Michigan High School Athletic Ass'n, 64 F.3d 1026 (6th Cir. 1995), and the Eighth Circuit in Pottgen v. Missouri State High School Athletic Ass'n, 40 F.3d 926, 930 (8th Cir. 1994), have considered an age limit rule and have held that waiver of that rule would not be a reasonable modification. Age limits usually are justified on the ground that they prevent stronger and larger players from dominating athletics and harming younger players. No such rule is before us in this case. Indeed, although Indiana has such a rule and although it will prevent Mr. Washington's playing high school basketball in the future, he has brought no challenge to that rule in this litigation.