**ABILITY CENTER OF GREATER TOLEDO, et al., Plaintiffs,**

**v.**

**CITY OF SANDUSKY, et al., Defendants.**

**No. 3:99CV7555.**

United States District Court, N.D. Ohio, Western Division.

Dec. 26, 2001.

Thomas J. Zraik, Sylvania, OH, for Ability Center of Greater Toledo, The, Cora Lee Bosworth, Mary Butler, Shona Eakin, Woody Osburn, Tracy Justesen, Statewide Independent Living Counsel, The, Timothy Harrington, Plaintiffs.

William P. Lang, Avon Lake, OH, for City of Sandusky, Gerald A Lechner, In

his official capacity as City Manager of the City of Sandusky, Defendants.

## ORDER

CARR, District Judge.

Plaintiffs Ability Center of Greater Toledo, et al., brought this case under the Americans with Disabilities Act ("ADA") alleging that defendants unlawfully failed to install curb ramps on sidewalks and failed to develop and implement a transition plan for the installation of curb cuts. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendants' motion for reconsideration of this court's order granting in part plaintiffs' motion for summary judgment. For the following reasons, defendants' motion shall be denied.

## BACKGROUND

The factual background in this case has been recounted in this court's order issued on February 16, 2001. (Doc. 50). In that order, I granted in part and denied in part plaintiffs' motion for summary judgment. I found that the City failed to install curb cuts and ramps (or to do so properly) when resurfacing and altering or installing city sidewalks in violation of Title II of the ADA. Defendants now request this court to reconsider its ruling in light of the United States Supreme Court's recent decision, *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

## DISCUSSION

### I. *Alexander v. Sandoval*

In *Sandoval*, plaintiffs brought suit for discrimination based on their national origin. *Id.* at 1515. In 1990, Alabama amended its Constitution and declared English as its official language. *Id.* The Alabama Department of Public Safety began to conduct state driver's license examinations only in English. *Id.* Plaintiffs brought suit for discrimination under a Department of Justice regulation promulgated pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*

Section 601 of Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI, 42 U.S.C. § 2000d. Section 602 of Title VI provides that federal agencies have the authority "to effectuate the provisions of section 601 ... by issuing rules, regulations, or orders of general applicability." 42 U.S.C. § 2000d–1. The Department of Justice ("DOJ") promulgated a regulation "forbidding funding recipients to 'utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin ....'" *Sandoval*, 121 S.Ct. at 1515 (quoting 28 C.F.R. § 42.104(b)(2) (1999)).

Plaintiffs argued that the English-only policy violated the DOJ regulation "because it had the effect of subjecting non-English speakers to discrimination based on their national origin." *Id.*

The Court stated that three aspects of Title VI must be taken as given based on prior decisions and congressional amendments to Title VI. *Id.* at 1516. The Court first stated that private individuals are authorized to sue to enforce § 601 and obtain injunctive relief and damages. *Id.* The Court then stated, " § 601 prohibits only intentional discrimination." *Id.* The Court finally stated it would assume that § 602's regulations "may validly proscribe activities that have a disparate impact on

racial groups, even though such activities are permissible under § 601." *Id.* at 1517.

The Court considered the issue of whether a private cause of action exists to enforce disparate impact regulations promulgated under § 602 of Title VI. The Court determined that such a private cause of action did not exist because it was not intended by Congress. *Id.* at 1523.

The Court stated, "A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." *Id.* at 1518. Section 601 could not convey a private right of action for regulations prohibiting disparate impact discrimination because § 601 only prohibits intentional discrimination. *Id.* at 1519. The question, therefore, before the Court, was whether § 602 conferred a private cause of action to enforce disparate impact regulations. *Id.*

The Court determined that § 602 did not contain rights-creating language and did not demonstrate congressional intent to create a private cause of action under regulations prohibiting disparate impact discrimination. *Id.* at 1521. The Court stated, "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 1522 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n. 18, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

■ *Sandoval* thus holds that the disparate impact regulations promulgated under § 602 of Title VI do not establish a private cause of action because Congress did not intend § 602 to create such a right. *Id.* at 1523. Read broadly, *Sandoval* states that regulations cannot create a private cause of action when the statute authorizing promulgation of such regulations did not intend to establish a private right of action. *Id.*

## II.  Impact of *Sandoval*

Defendants argue that the Court's holding in *Sandoval* requires reconsideration of my previous decision ruling defendants violated the ADA and its regulations for failing to install or properly to install curb cuts and ramps when resurfacing and altering or installing city sidewalks. I disagree.

Defendants analogized *Sandoval* to this case because Title II provides "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 [of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133. Section 794a(a)(2) of Title 29 of the Rehabilitation Act provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act." 29 U.S.C. § 794a.

Defendants thus contend that because *Sandoval* held that § 602 of Title VI of the Civil Rights Act does not allow a private cause of action for disparate impact discrimination, and because the rights of Title VI are the rights of the Rehabilitation Act and Title II of the ADA, a private cause of action for disparate impact discrimination is not available under Title II of the ADA. Stated differently, defendants argue Title II of the ADA does not establish a private cause of action under regulations prohibiting disparate impact discrimination because, under *Sandoval*, § 602 of the Civil Rights Act does not establish a cause of action under regulations prohibiting disparate impact discrimination.

Defendants contend, "A right of action is granted in § 12133 [of ADA Title II] for violation of § 12132 only. Congress did not grant individuals the right of action for violation of regulations promulgated pursuant to § 12134." (Doc. 64 at 3).

■ I cannot conclude, as Defendants urge in their motion to reconsider, that a private cause of action does not exist under Title II regulations prohibiting disparate impact discrimination simply because of the Court's decision in *Sandoval*. While the ADA and Civil Rights Act are connected in some ways, the two statutes are different with different legislative history. The Court in *Sandoval* did not hold that a private cause of action based on disparate impact regulations promulgated under the ADA is invalid. *Sandoval* simply provides guidance in determining that issue.

As in *Sandoval*, the issue in this case is whether the statute, here Title II of the ADA, establishes a private cause of action for disparate impact discrimination. If so, regulations promulgated under that statute, which prohibit various forms of disparate impact discrimination, can be the basis of a private cause of action. Stated differently, I must determine whether Title II manifests congressional intent to create a private cause of action for disparate impact discrimination or whether such a private cause of action stems from the regulations alone.

The United States, in its amicus brief, argues that the ADA's language and its legislative history demonstrate congressional intent to prohibit disparate impact discrimination. The United States specifically contends that the ADA demonstrates intent to require the removal of architectural barriers. I agree.

In findings applicable to the entire ADA, Congress stated:

[I]ndividuals with disabilities continually encounter various forms of discrimination, *including outright intentional exclusion, the discriminatory effects of architectural*, transportation, and communications *barriers*, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

42 U.S.C. § 12101(a)(5) (emphasis added). This language demonstrates that part of Congress's intent was to eliminate discriminatory effects of architectural barriers. Because disparate impact discrimination specifically deals with discriminatory effects, Congress's findings establish an intent to address disparate impact discrimination. *Cf. United States v. City of Warren*, 138 F.3d 1083, 1094 (6th Cir.1998) ("The disparate impact theory subjects any facially neutral policy with a discriminatory effect to Title VII.") (citation omitted).

The language of Title II also demonstrates an intent to address disparate impact discrimination. Title II provides: "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability," under Title II, is

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the

receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131.

The statutory language prohibiting discrimination and the definition of a "qualified individual with a disability" do not necessarily require an intent to discriminate. An entity violates Title II by intentionally discriminating against a person because of his or her disability or by taking action that has the effect of discriminating against an individual with a disability. Congress specifically sought to eliminate discrimination such as the failure to remove architectural barriers.

Title II states that the remedies and rights under the Rehabilitation Act are incorporated into the ADA. *See e.g.*, 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 794a of Title 29 [of the Rehabilitation Act] shall be the remedies, procedures, and rights [Title II] provides ...."). The Supreme Court in *Alexander v. Choate*, 469 U.S. 287, 296–97, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), stated that the Rehabilitation Act addressed both intentional and disparate impact discrimination. *See id.* ("[M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent."). By extension, then, because Title II provides the same protection as the Rehabilitation Act, and the Rehabilitation Act covers disparate impact discrimination, Title II also covers disparate impact discrimination.

Legislative history additionally establishes Congress's recognition that disability discrimination is not always intentional. Congress deliberately decided "not to list all the types of actions that are included within the term 'discrimination' [under Ti-

tle II], as was done in titles I and III, because [Title II] essentially simply extends the anti-discrimination prohibition embodied in section 504 to all actions of state and local governments." H.R.Rep. No. 101–485, pt. 2, at 84 (1990); *see* H.R. Rep. No. 101–485, pt. 3, at 47 (1990) ("Unlike other titles in this Act, title II does not list all of the forms of discrimination that the title is intended to prohibit."); 135 Cong. Rec. S4986 (daily ed. May 9, 1989) (statement of Sen. Harkin) ("the purposes of the ADA include providing clear, strong, consistent, enforceable standards addressing all forms of discrimination against individuals on the basis of disability .... This means that discrimination on the basis of disability in any form will not be tolerated").

Courts interpreting Title II have found that Title II encompasses disparate impact discrimination. In *Olmstead v. L.C.*, 527 U.S. 581, 598, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), the Supreme Court rejected the argument, based on Title II, that defendants in that case did not discriminate against plaintiffs because plaintiffs did not suffer discrimination because of their disabilities or unequal treatment of similarly situated individuals. The Court stated, "We are satisfied that Congress had a more comprehensive view of the concept of discrimination advanced in the ADA." *Id.*

The Seventh Circuit stated, "We cannot accept the suggestion that liability under Title II of the Discrimination Act must be premised on an intent to discriminate on the basis of disability. This court previously has recognized that a plaintiff making a claim under the Rehabilitation Act need not prove an impermissible intent." *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999) (citation omitted). The court pointed to other circuits which do not require intent to discriminate under Title II or the

Rehabilitation Act. *Id.* at 847 (citing *McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 460 (6th Cir.1997); *Crowder v. Kitagawa,* 81 F.3d 1480, 1483–84 (9th Cir.1996); *Norcross v. Sneed,* 755 F.2d 113, 117 n. 4 (8th Cir.1985); *Pushkin v. Regents of the Univ. of Colo.,* 658 F.2d 1372, 1385 (10th Cir.1981); *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 306 (5th Cir.1981)).

Interpreting a Sixth Circuit case, the court stated in *Washington:*

> In our view, the Sixth Circuit outlined correctly in *McPherson* the various methods of proof in § 504 Rehabilitation Act or Title II ADA claims: discrimination under both acts may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) *the defendant's rule disproportionally impacts disabled people.*

181 F.3d at 847 (emphasis added).

It appears that Congress intended Title II of the ADA to cover disparate impact discrimination. *Sandoval* is thus distinguishable. Unlike the Civil Rights Act, the ADA's language demonstrates a congressional intent to cover disparate impact discrimination. The statute's language, in addition to the regulations, therefore establishes a private cause of action for disparate impact discrimination.

I am not alone in my conclusion, in light of *Sandoval,* that the language of the ADA evidences an intent to allow a private cause of action for disparate impact discrimination under Title II. In *Frederick L. v. Department of Public Welfare,* 157 F.Supp.2d 509 (E.D.Pa.2001), four individuals with mental disabilities alleged that defendants violated Title II of the ADA and the Rehabilitation Act by segregating them in a hospital. Defendants argued that plaintiffs' claims should fail as a mat-

ter of law because of *Sandoval.* Defendants contended that "because the so-called integration mandate cannot be found in the statutory text, Plaintiffs' ADA claims must be dismissed in accordance with Sandoval." *Id.* at 538–39.

In response to this contention, the court stated:

> Sandoval teaches that private individuals cannot bring suit to enforce rights that are forbidden by implementing regulations, but permitted by the statute. The ADA, like section 504 and unlike Title VI, prohibits disparate-impact discrimination. The Defendants would be correct if the integration mandate required action or inaction beyond what is required by the statute itself. That is not the case here. The ADA regulations at issue here are merely rules for the implementation of the statutory directives; they do not prohibit otherwise permissible conduct.

*Id.* at 539.

The court found that, because the statutory language of the ADA was intended to remedy discrimination such as the isolation of individuals because of their mental disabilities, *Sandoval* did not preclude plaintiffs' claims. *Id.* The court also noted that Congress deliberately decided not to list all forms of discrimination under Title II because it incorporated the protection of the Rehabilitation Act. *Id.* (citations omitted).

In *Access Living of Metropolitan Chicago v. Chicago Transit Authority,* No. 00 C 0770, 2001 WL 492473, 2001 U.S. Dist. LEXIS 6041 (N.D.Ill. May 9, 2001), the plaintiffs alleged that defendant violated Title II of the ADA and the Rehabilitation Act. Defendant relied on *Sandoval* and argued that plaintiffs were required to show proof of intent to discriminate to

bring a claim under Title II. The court stated:

> Defendant reads Sandoval far too broadly. In this court's view, the only immediate impact of Sandoval is that it resolves prior ambiguity and makes clear that private plaintiffs must prove intentional discrimination to recover damages under the ADA. Sandoval did not, however, abrogate or limit plaintiffs' right to bring this action [for injunctive relief].

2001 WL 492473, at *6, 2001 U.S. Dist. LEXIS 6041, at *20. The court distinguished *Sandoval* because the Title II regulations did not expand the statutory definition of discrimination like the regulations at issue in *Sandoval*. 2001 WL 492473, at *6, 2001 U.S. Dist. LEXIS 6041, at *22.

Defendants in this case also read *Sandoval* too broadly. Congress intended a private cause of action for disparate impact discrimination to exist under Title II of the ADA. Congressional intent is manifest in the language of the statute incorporating the rights available under the Rehabilitation Act and the legislative history. Other courts have found the existence of such a private cause of action, both before and after the Supreme Court's decision in *Sandoval*.

Because Congress intended to create a private cause of action for disparate impact discrimination in Title II of the ADA and authorized the promulgation of regulations to implement Title II, I find that plaintiffs can assert a private cause of action for violation of the regulations. *See Sandoval,* 121 S.Ct. at 1518 ("A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well.").[1] Similar to the regulations at issue in *Frederick,* the regulations in this case "are merely rules for the implementation of the statutory directives; they do not prohibit otherwise permissible conduct." *Frederick,* 157 F.Supp.2d at 539.

Defendants' motion for reconsideration based on the implication of *Sandoval* shall be, therefore, denied.

## CONCLUSION

It is, therefore,

## ORDERED THAT

Defendants' motion for reconsideration be, and hereby is, denied.

So ordered.

---

1. Plaintiffs argue, "[S]ince the law regarding implied private right of action has been well established by the Supreme Court and the Sixth Circuit in cases arising out of the ADA and Section 504 [of the Rehabilitation Act], there is no reason for this Court to deviate from well established precedent by applying *Sandoval* to this case." (Doc. 61 at 9). Plaintiffs rely on *Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) for the proposition that a lower court must follow caselaw that directly controls even though later cases, that do not directly control, may dictate a different result. Plaintiffs' argument is well-taken.

In *Rodriguez,* the Supreme Court stated, "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Id.* at 484, 109 S.Ct. 1917. Because *Sandoval* did not address Title II of the ADA, I must follow earlier precedent directly ruling on the ADA or the Rehabilitation Act.